IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT F. FRANCIS, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 2:07-cv-14921 |
| | ) | |
| AT&T INC. d/b/a AT&T | ) | **ORAL ARGUMENT REQUESTED** |
| AT&T MOBILITY, LLC, f/k/a | ) | |
| CINGULAR WIRELESS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## AT&T MOBILITY LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO DECLARE CLASS WAIVER UNLAWFUL

Michelle Thurber Czapski
Toby A. White
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
Telephone: (313) 223-3636

Evan M. Tager (co-counsel)
Archis A. Parasharami (co-counsel)
MAYER BROWN LLP
1909 K Street NW
Washington, DC 20006
Telephone: (202) 263-3000

Defendant AT&T Mobility LLC ("ATTM")[1] respectfully opposes plaintiff's motion to declare unlawful the class-action waiver in his arbitration clause.   Moreover, for the reasons set forth in ATTM's previously filed motion to compel arbitration, the Court should order plaintiff to pursue his claims against ATTM either in arbitration or in small-claims court.

In support of this opposition, ATTM incorporates by reference the attached brief and declaration.

Dated:  January 31, 2008.                     Respectfully submitted,

                                          _/s/ Toby A. White_____
                                          DICKINSON WRIGHT PLLC
                                          Kenneth J. McIntyre (P17450)
                                          Michelle Thurber Czapski (P47267)
                                          Toby A. White (P67530)
                                          Attorneys for Defendant AT&T Mobility, LLC
                                          500 Woodward Ave., Suite 4000
                                          Detroit, MI 48226
                                          (313) 223-3500
                                          kmcintyre@dickinsonwright.com
                                          mczapski@dickinsonwright.com
                                          twhite@dickinsonwright.com

---

[1]      This opposition is filed on behalf of defendant ATTM only.  AT&T Inc. is a separate entity and has not, as of this date, entered an appearance in this action.  Furthermore, plaintiff has agreed to stipulate to the dismissal without prejudice of his claims against AT&T Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| ROBERT F. FRANCIS, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 2:07-cv-14921 |
| | ) | |
| AT&T INC. d/b/a AT&T | ) | **ORAL ARGUMENT REQUESTED** |
| AT&T MOBILITY, LLC, f/k/a | ) | |
| CINGULAR WIRELESS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### AT&T MOBILITY'S BRIEF IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION TO DECLARE CLASS WAIVER UNLAWFUL

Michelle Thurber Czapski
Toby A. White
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
Telephone: (313) 223-3636

Evan M. Tager (co-counsel)
Archis A. Parasharami (co-counsel)
MAYER BROWN LLP
1909 K Street NW
Washington, DC  20006
Telephone:  (202) 263-3000

*Attorneys for Defendant AT&T Mobility LLC*

**ISSUE PRESENTED**

The Federal Arbitration Act ("FAA") mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The plaintiff in this case, Robert F. Francis, II, receives wireless service from defendant AT&T Mobility LLC ("ATTM") pursuant to a service agreement containing an arbitration provision. Francis concedes that the provision requires ATTM and Francis to resolve their disputes either by arbitration on an individual (rather than class-wide) basis or in small-claims court.

Nevertheless, Francis has moved this Court for a declaration that the class waiver contained in the arbitration provision to which he agreed is unlawful. His motion presents two issues:

(1)    Whether a plaintiff may file a motion requesting declaratory relief when his complaint does not seek—and, indeed, makes no reference to a claim for—such relief; and if so

(2)    Whether, under Michigan law and the FAA, Francis is entitled to a declaration that ATTM's arbitration provision is unenforceable in all cases simply because it requires that arbitration be conducted on an individual basis.

# TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ......................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iv

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    FRANCIS'S MOTION IS PROCEDURALLY IMPROPER ......................................... 2

II.   FRANCIS'S MOTION IS LEGALLY UNTENABLE .................................................. 4

      A.    The Class Waiver in ATTM's Arbitration Provision is Fully Enforceable
             Under Michigan Law ............................................................................................ 4

             1.    Michigan's public policy favors enforcing arbitration provisions,
                  including ones that require arbitration to be conducted on an
                  individual basis .......................................................................................... 4

             2.    The authorities that Francis cites are inapplicable because they
                  involve arbitration clauses that, unlike ATTM's, make individual
                  arbitration impractical ............................................................................... 7

             3.    Francis's insinuation that ATTM's arbitration provision precludes
                  the Attorney General from enforcing the MCPA is misguided ............... 15

      B.    If Michigan Public Policy Were Construed to Create a Per Se Rule
             Against Class Arbitration Waivers, Such a Policy Would Be Preempted by
             the FAA .................................................................................................................. 16

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160 (N.D. Cal. 2002) ...................................12

*Barmat, Inc. v. United States*, 159 F.R.D. 578 (N.D. Ga. 1994) .....................................................4

*Battels v. Sears Nat'l Bank*, 365 F. Supp. 2d 1205 (M.D. Ala. 2005) .............................................9

*Billups v. Bankfirst*, 294 F. Supp. 2d 1265 (M.D. Ala. 2003) .........................................................9

*Blaz v. Belfer*, 368 F.3d 501 (5th Cir. 2004).....................................................................................7

*Blitz v. AT&T Wireless Servs., Inc.*, No. 054-00281 (slip op. at 4) ...........................................9, 15

*Buck v. Libous*, 2005 WL 1460408 (N.D.N.Y. June 20, 2005) .......................................................3

*Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471 (Mich. Ct. App. 2005)......................................6

*Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165 (N.D. Cal. 2002)....................................................12

*Copeland v. Katz*, No. 05-73370, 2005 WL 3163296 (E.D. Mich. Nov. 28, 2005) ...................5, 7

*Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007)................................................................5

*Dean v. Haman*, 2006 WL 1330325 (Mich. Ct. App. May 16, 2006) .........................................5, 6

*Deaton v. Overstock.com, Inc.*, 2007 WL 4569874 (S.D. Ill. Dec. 27, 2007) ..............................10

*Dettlof v. Hammond, Standish, & Co.*, 161 N.W. 949 (Mich. 1917)...............................................6

*EEOC v. Waffle House*, 534 U.S. 279 (2002) ...............................................................................15

*Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161 (Ohio Ct. App. 2004) ............................12, 14

*Fusco v. Rome Cable Corp.*, 859 F. Supp. 624 (N.D.N.Y. 1994) ..................................................3

*Gay v. CreditInform*, __ F.3d. ___, 2007 WL 4410362 (3d Cir. Dec. 19, 2007) ........................11

*Gipson v. Cross Country Bank*, 294 F. Supp. 2d 1251 (M.D. Ala. 2003) ......................................9

*Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452 (S.D.N.Y. 1995) .........2, 3

*Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868 (11th Cir. 2005) ..........................7

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Johnson v. W. Suburban Bank*, 225 F.3d 366 (3d Cir. 2000) ....................................................5, 11

*Kinkel v. Cingular Wireless, LLC*, 828 N.E.2d 812 (Ill. App. Ct. 2005), *aff'd*,
    857 N.E.2d 250 (Ill. 2006) ........................................................................................9, 10

*In re Knepp*, 229 B.R. 821 (Bankr. N.D. Ala. 1999) ....................................................12

*Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006)................................................11

*Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101 (M.D. Ala. 2004)......................9

*Leonard v. Terminix Int'l Co.*, 854 So. 2d 529 (Ala. 2002) ...........................................9

*Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087 (W.D. Mich. 2000)...................8, 12

*Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166 (W.D. Wash. 2002)...........................13

*Lytle v. CitiFinancial Services, Inc.*, 810 A.2d 643 (Pa. Super. Ct. 2002), *overruled in
    part and abrogated by Salley v. Option One Mortgage Corp.*, 925 A.2d 115
    (Pa. 2007) ........................................................................................................11

*Michelson v. Voison*, 658 N.W.2d 188 (Mich. Ct. App. 2003) ...........................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ........................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)...................................1

*OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 2006 WL 2788644
    (D. Ariz. Sept. 20, 2006)...........................................................................................3

*Pitchford v. AmSouth Bank*, 285 F. Supp. 2d 1286 (M.D. Ala. 2003)............................................9

*Pivoris v. TCF Fin. Corp.*, 2007 WL 4355040 (N.D. Ill. Dec. 7, 2007) ......................................10

*Pully v. IRS*, 939 F. Supp. 429 (E.D. Va. 1996) ...........................................................3

*Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208
    (Mich. Ct. App. 1999)............................................................................4, 6, 7, 8

*Rory v. Continental Ins. Co.*, 703 N.W.2d 23 (Mich. 2005)...............................................6

*Salley v. Option One Mortgage Corp.*, 925 A.2d 115 (Pa. 2007)..................................................11

*Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333 (M.D. Ala. 2003)........................................9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Taylor v. First N. Am. Nat'l Bank*, 325 F. Supp. 2d 1304 (M.D. Ala. 2004)...................................9

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ........................................................13, 14

*Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916 (M.D. Tenn. 2003) ..............13

*Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300 (Mo. Ct. App. 2005)..................8, 9, 14

*Wong v. T-Mobile USA, Inc.*, No. 05-73922, 2006 WL 2042512 (E.D. Mich. 2006) ...........5, 8, 13

**Statutes:**

9 U.S.C. § 2.............................................................................................................2

28 U.S.C. § 2201......................................................................................................2

CAL. CIV. CODE §§ 1751, 1781(a) ...........................................................................14

Federal Rule of Civil Procedure 57 .....................................................................2, 3, 4

MICH. COMP. LAWS ANN. § 445.905........................................................................16

MICH. COMP. LAWS ANN. § 445.911(3)......................................................................5

MICH. COMP. LAWS ANN. § 445.915........................................................................16

The Federal Arbitration Act, 9 U.S.C. §§ 1-16..........................................................1

**Miscellaneous:**

10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL
      PRACTICE AND PROCEDURE: CIVIL § 2768 (3d ed. 1998)....................................2

12 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 57.06[1] (3d ed. 1999)...................2

## INTRODUCTION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, mandates that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Nevertheless, Francis now urges this Court to declare invalid the arbitration provision to which he agreed, contending that its requirement that he arbitrate on an individual basis is unconscionable and contrary to Michigan public policy.

To begin with, Francis's motion for a declaration is entirely unnecessary. Francis was well aware that ATTM intended to respond to his complaint by moving to compel arbitration. He can (and, indeed, surely will) make any arguments against the enforceability of the prohibition of class arbitration in opposition to our motion to compel arbitration. Accordingly, the simplest way for the Court to resolve the current motion is to defer ruling on it until after the Court has decided the motion to compel arbitration, and then to deny it as moot.

In any event, Francis's motion is untenable for two reasons. First, it is procedurally improper. Second, Francis's contention that his arbitration agreement with ATTM is contrary to Michigan public policy merely because it requires arbitration to be conducted on an individual basis is mistaken.

## BACKGROUND

The relevant facts are set forth in ATTM's motion to compel arbitration and are not in dispute. Francis concedes that he obtained wireless telephone service from ATTM pursuant to a Wireless Service Agreement ("WSA") that contains an arbitration clause requiring him to pursue any claims against ATTM individually, rather than as a representative or member of a class. Plaintiff's Brief in Support of Mot. to Declare Class Action Waiver Unlawful ("Francis Brief")

at 1-2.  Francis nonetheless argues that this Court should issue a declaration that his arbitration agreement is unenforceable.

## ARGUMENT

### I.     FRANCIS'S MOTION IS PROCEDURALLY IMPROPER.

As an initial matter, Francis's motion fails to comply with Federal Rule of Civil Procedure 57.   That Rule explains that "[t]he procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C., § 2201, ***shall be in accordance with these rules * * *.*"   FED. R. CIV. P. 57 (emphasis added).   Under Rule 57, a litigant only " may bring ***an action*** seeking a declaratory judgment."   *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 455 (S.D.N.Y. 1995) (emphasis added).   An action for a declaratory judgment is an "ordinary civil action" subject to the same requirements as all other civil actions.   *Id.*   The leading treatises are in accord:  *See* 12 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 57.06[1] (3d ed. 1999) ("A declaratory judgment action is commenced in the same manner as every other civil action: the filing of a complaint in accordance with Rule 3."); 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2768 (3d ed. 1998) ("[T]he requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions.   Consequently the action is commenced by filing a complaint * * * as provided in Rules 3 and 4.").

In *Teamsters*—the leading case on this subject—the Southern District of New York rejected a motion for declaratory relief for failure to comply with Rule 57.   There, as here, the plaintiffs' complaint did not state a claim for declaratory judgment.   The plaintiffs nevertheless moved for a declaration that they could use disputed funds held in an escrow account.   160

F.R.D. at 454.  Although their motion cited Rule 57, they later "assert[ed] * * * that the * * * motion [was] not made pursuant to any specific statute or federal rule" but instead rested upon the court's inherent power.  *Id.* at 454-55.  The court rejected that argument, emphasizing that, "where the Federal Rules of Civil Procedure specifically address a subject, a litigant is not free to disregard the requirements that the Rules impose.  * * *  Because plaintiffs seek a declaratory judgment, and because Rule 57 governs an action for a declaratory judgment, plaintiffs must comply with Rule 57's requirements."  *Id.* at 455.  Accordingly, the court denied the motion because it was "inconsistent with the Federal Rules."  *Id.* at 456; *see also id.* ("Because an action for a declaratory judgment is an ordinary civil action, a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment.") (emphases in original).

The District of Arizona has reached the same conclusion, holding that, under Rules 7(a) and 57, "the pleadings allowed include a complaint and a third-party complaint.  It thus appears that a request for declaratory relief may not be made by 'motion.'"  *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 2006 WL 2788644, at *3 (D. Ariz. Sept. 20, 2006) (emphasis omitted) Numerous other courts agree.  *See, e.g.*, *Buck v. Libous*, 2005 WL 1460408, at *9 (N.D.N.Y. June 20, 2005) ("Rule 57 does not provide a basis for making a motion; it just acknowledges the availability of declaratory judgment as a remedy."); *Pully v. IRS*, 939 F. Supp. 429, 440 (E.D. Va. 1996) ("Pully's attempt to seek declaratory relief in this case [by filing a motion] does violence * * * to the procedure in which a party seeks such relief."); *Fusco v. Rome Cable Corp.*, 859 F. Supp. 624, 628 (N.D.N.Y. 1994) ("On its face * * *, Rule 57 does not provide a basis for making a motion [for a declaratory judgment]; it just acknowledges the

availability of declaratory judgment as a remedy.  Nor does [28 U.S.C.] section 2201 provide an independent basis for making a motion; it simply creates the remedy of declaratory relief."); *Barmat, Inc. v. United States*, 159 F.R.D. 578, 582 (N.D. Ga. 1994) (denying motion for declaratory judgment and noting that, "[g]enerally, declaratory judgments are sought by petition or complaint, rather than by motion, by parties to a controversy").

In sum, Rule 57 and the case law interpreting it require this Court to deny Francis's motion because it is procedurally improper.

## II.     FRANCIS'S MOTION IS LEGALLY UNTENABLE.

### A.     The Class Waiver In ATTM's Arbitration Provision Is Fully Enforceable Under Michigan Law.

As we explained in our motion to compel arbitration, Francis's arbitration agreement— including its requirement that arbitration be conducted on an individual basis—is not unconscionable under Michigan law.  Francis's related contention that the waiver of class arbitration violates Michigan public policy is likewise without merit.

#### 1.     Michigan's public policy favors enforcing arbitration provisions, including ones that require arbitration to be conducted on an individual basis.

To begin with, Francis fails to acknowledge that Michigan has a strong policy *favoring* arbitration.  *See Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 214 (Mich. Ct. App. 1999).  Francis's contention does not honor that pro-arbitration policy; the logical implication of his argument is that the public policy of Michigan would declare *per se* unenforceable *every* arbitration clause containing a class waiver.  *See* Francis Brief at 3 ("Class action waivers that prohibit aggregating claims in either a judicial or arbitral forum violate both state and federal public policy, which favor class actions, as well as Michigan consumer

protection law.").

That contention misconstrues the law, both in Michigan and elsewhere.  *See Copeland v. Katz*, 2005 WL 3163296, at *4 (E.D. Mich. Nov. 28, 2005) (upholding a class-arbitration waiver under Michigan law); *Wong v. T-Mobile USA, Inc.*, 2006 WL 2042512, at *5 (E.D. Mich. 2006) (limiting the invalidation of an arbitration clause containing a class waiver to "the facts of this case"); *cf.*, *e.g.*, *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007) ("We thus conclude that the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances."); *Johnson v. W. Suburban Bank*, 225 F.3d 366, 369 (3d Cir. 2000) (upholding a class waiver in a case involving federal statutory claims, over a public-policy challenge); *see also* ATTM Brief in Support of Motion to Compel Arbitration ("ATTM Arb. Br.") at 11-12 n.15.

More fundamentally, Francis's public-policy argument is based on a flawed premise. Francis assumes that, because the Michigan Consumer Protection Act ("MCPA") makes class actions ***permissible*** (*see* MICH. COMP. LAWS ANN. § 445.911(3) ("[a] person * * * may bring a class action")), it also means that the right to pursue a class action cannot be waived.  *See* Francis Brief at 4.

But ***nothing*** in the MCPA makes the statute's procedures—including the authorization of class actions—unwaivable.  To the contrary, the Michigan Court of Appeals has held that a contractual provision that altered a different procedural right under the MCPA—the statute of limitations—was fully enforceable.  *Dean v. Haman*, 2006 WL 1330325, at *3 (Mich. Ct. App. May 16, 2006) (upholding provision that shortened MCPA's six-year statute of limitations to six months).  The *Dean* court rejected the plaintiffs' contention that "a contractual limitation period

that shortens the six-year period of limitations set by the MCPA is prohibited because it eviscerates the protections of the act." *Id.* The court held instead that, because the MCPA "does not contain any prohibition against shortening its six-year period of limitations, * * * we will not read such a prohibition into the act." *Id. Accord Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 32 (Mich. 2005) (upholding a contractually shortened limitations period in an insurance policy); *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 474 (Mich. Ct. App. 2005) (same in an employment contract).[1]

Francis's reliance on *Rembert* (*see* Francis Brief at 7) is misplaced. In *Rembert*, the Michigan Court of Appeals—relying on U.S. Supreme Court precedent—rejected the argument that agreements to arbitrate claims arising under state civil rights statutes are contrary to Michigan public policy. As the *Rembert* court recognized, the Supreme Court has "roundly dismissed the suggestion that a waiver of the judicial forum means a waiver of statutory rights: 'By agreeing to arbitrate a statutory claim, a party *does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.*'" 596 N.W.2d at 217 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)) (emphasis supplied by *Rembert*).

Indeed, *Rembert* resoundingly "upholds the principle of freedom of contract and advances the public policy that strongly favors arbitration * * * subject to two conditions * * *:

---

[1] The cases cited by Francis (at page 3 of his brief) do not support his public-policy argument because the contract at issue in each of those cases was itself explicitly forbidden by law. *See Dettlof v. Hammond, Standish, & Co.*, 161 N.W. 949, 955 (Mich. 1917) (agreement waiving rights under the Workmen's Compensation Act "was void ab initio[] because opposed to public policy and express statute"); *Michelson v. Voison*, 658 N.W.2d 188, 191 (Mich. Ct. App. 2003) ("[T]he trial court properly rescinded a security contract made in violation of statutory law and public policy because defendants were not licensed or registered to sell securities.").

that the agreement waives no substantive rights, and that the agreement affords fair procedures." *Rembert*, 596 N.W.2d at 211. These two conditions are easily satisfied here. **First**, it is well-settled that "there is no substantive right to a class remedy; a class action is a procedural device." *Blaz v. Belfer*, 368 F.3d 501, 505 (5th Cir. 2004); *accord, e.g.*, *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 878 (11th Cir. 2005) (holding that an arbitration provision containing a class waiver "permit[ted] * * * consumers to vindicate all of their substantive rights in arbitration"). **Second**, ATTM's arbitration provision more than satisfies *Rembert*'s requirement of procedural fairness. Although *Rembert* identifies several components of procedural fairness in arbitration, the availability of class procedures is not among them. *See Rembert*, 596 N.W.2d at 227-29. Indeed, *Rembert* did not even insist that the drafter of the arbitration provision pay the cost of arbitration. *Id.* at 228. ATTM's provision more than exceeds *Rembert*'s requirements because ATTM not only has agreed to pay the full costs of arbitration and made arbitration simpler and more accessible for its customers, it also has made available substantial premiums to encourage its customers to pursue arbitration. *See* ATTM Arb. Br. at 3-4.

> **2.    The authorities that Francis cites are inapplicable because they involve arbitration clauses that, unlike ATTM's, make individual arbitration impractical.**

In accord with *Rembert,* the federal courts in Michigan have looked to the particular features of an arbitration provision containing a class waiver to determine whether that provision allows for effective vindication of individual statutory rights. *See Copeland*, 2005 WL 3163296, at *3 ("To invalidate an arbitration provision based on excessive costs, it is the challenging party's burden to come forward with evidence demonstrating that the potential costs of

arbitration are great enough to deter plaintiff or similarly situated individuals from seeking to vindicate their rights in an arbitral forum.") (internal quotation marks omitted); *Wong*, 2006 WL 2042512, at *5 ("Whether the right to a class action is a substantive or a procedural one, it is certainly necessary for the vindication of statutory rights, ***at least under the facts of this case***.") (emphasis added); *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1104 (W.D. Mich. 2000) ("The *Rembert* court specifically noted that the fairness of arbitration agreements is a particularized inquiry and that the *Rembert* analysis was not intended to be applied as a system of blanket rules.").

Despite the case-specific analysis required by *Rembert* and the recent federal decisions, Francis fails to address the details of ATTM's particular arbitration provision.  And for good reason:  That arbitration agreement, the most consumer-friendly in the nation, differs significantly from the ones at issue in the cases on which Francis relies.  Specifically, all of the cases that Francis cites involve arbitration provisions that combined a prohibition of class arbitration with limitations on the ability of a consumer to pursue arbitration individually.[2]

***First***, unlike ATTM's provision, which obligates ATTM to pay all of the costs of arbitration, many of the decisions cited by Francis involved arbitration provisions that required a consumer to pay costs of arbitration that were in excess of the consumer's claim.  For example, in *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300 (Mo. Ct. App. 2005), the court explained that the clause both "prohibited class actions and required the customer to bear the costs of arbitration, thereby limiting Whitney and other customers to a forum where the expense

---

[2]    Virtually all of the cases that Francis discusses were not decided on the basis of state "public policy"; instead, the courts in those cases considered related (though distinct) challenges to arbitration provisions based on "unconscionability."

of pursuing most claims related to incorrect billing would far exceed the amount in controversy." *Id.* at 313. A Missouri trial court subsequently distinguished an earlier version of ATTM's arbitration provision—which contained fewer consumer-friendly features than the ATTM provision at issue in this case—noting that ATTM's provision "allow[ed] for cost-free arbitration," while "Alltel's provision, on the other hand, imposed prohibitive costs on customers." *Blitz v. AT&T Wireless Servs., Inc.*, No. 054-00281 (slip op. at 4) (internal quotation marks, citations, footnote, and brackets omitted) (attached as Exhibit 1).

The Alabama Supreme Court's decision in *Leonard v. Terminix International Co.*, 854 So. 2d 529 (Ala. 2002), likewise involved an arbitration provision that required consumers to pay substantial arbitration costs, which had the effect of "restrict[ing] the [plaintiffs] to a forum where the expense of pursuing their claim far exceeds the amount in controversy." *Id.* at 539. Explaining the holding in *Leonard*, one federal district court in Alabama stated: "The costs of arbitrating the Leonards' claim (at least 1,100 dollars) exceeded the dollar value of their claim (less than 500 dollars), which effectively made arbitration an illusory forum for vindicating their substantive rights." *Pitchford v. AmSouth Bank*, 285 F. Supp. 2d 1286, 1296 (M.D. Ala. 2003).[3]

Francis also points to an Illinois Appellate Court decision that invalidated the class waiver in an earlier version of ATTM's arbitration provision that has since been superseded (twice). *Kinkel v. Cingular Wireless, LLC*, 828 N.E.2d 812 (Ill. App. Ct. 2005), *aff'd*, 857

---

[3] Several other federal district courts in Alabama that have upheld class-action prohibitions in arbitration provisions have distinguished *Leonard* on similar grounds. *See Battels v. Sears Nat'l Bank*, 365 F. Supp. 2d 1205, 1217 (M.D. Ala. 2005); *Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101, 1112 (M.D. Ala. 2004); *Taylor v. First N. Am. Nat'l Bank*, 325 F. Supp. 2d 1304, 1319-22 (M.D. Ala. 2004); *Billups v. Bankfirst*, 294 F. Supp. 2d 1265, 1276-77 (M.D. Ala. 2003); *Gipson v. Cross Country Bank*, 294 F. Supp. 2d 1251, 1263-64 (M.D. Ala. 2003); *Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333, 1345-46 (M.D. Ala. 2003).

N.E.2d 250, 267 (Ill. 2006).  The appellate court held that the "[t]he cost of filing alone [$125] would offset a significant portion of any potential recovery"—estimated at $150—"which would be further offset by any costs incurred in presenting the claim and any lost wages for taking time from work to do so."  *Id.* at 820.

    While the Illinois Supreme Court agreed with the appellate court that the costs of arbitration were excessive, it refused to recognize the type of blanket rule against class-arbitration waivers that Francis advocates.  Instead, the state supreme court explained:

> We do not hold that class action waivers are *per se* unconscionable.  It is not unconscionable or even unethical for a business to attempt to limit its exposure to class arbitration or litigation, but to prefer to resolve the claims of customers or clients individually.  * * *  The unconscionability of class action waivers must be determined on a case-by-case basis, considering the totality of the circumstances.

857 N.E.2d at 278.

    Accordingly, the *Kinkel* court stated, "a class action waiver will **not** be found unconscionable * * * if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner."  *Id.*  at 274 (emphasis added).[4]  And subsequent decisions of Illinois federal courts that have applied *Kinkel*'s reasoning make clear that ATTM's **current** arbitration provision would surely pass muster under Illinois law.  *See Pivoris v. TCF Fin. Corp.*, 2007 WL 4355040, at *5 (N.D. Ill. Dec. 7, 2007) (enforcing arbitration clause with class waiver where arbitration clause provided same rights to fee-shifting that claimant would have enjoyed in court); *Deaton v. Overstock.com, Inc.*, 2007 WL 4569874, at *2-*3 (S.D. Ill. Dec. 27, 2007)

---

[4]    The *Kinkel* court also criticized ATTM's earlier provision because it required that arbitrations be kept confidential.   857 N.E.2d at 275.   By contrast, ATTM's current provision imposes no such requirement.

(upholding arbitration provision containing class waiver and explaining that, in light of defendant's agreement to pay plaintiff's arbitration costs, "the Court cannot conclude that arbitration of this action is prohibitively expensive").

The Pennsylvania Superior Court's decision in *Lytle v. CitiFinancial Services, Inc.*, 810 A.2d 643 (Pa. Super. Ct. 2002), *overruled in part and abrogated by Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 129 (Pa. 2007), is also inapposite. In that case, the arbitration clause provided that the plaintiffs would have to pay an initial filing fee of $125 to arbitrate. *Id.* at 651. The clause also provided that if the plaintiffs did not prevail they would be required to pay the costs of any arbitration that exceeded one day. *Id.* It was for that reason—which is inapplicable here—that the superior court remanded to the trial court to determine whether "the costs associate[d] with individual versus class-based litigation would, in light of the amount of their damages, result in continuing immunity for [the defendant]." *Id.* at 666.[5]

*Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), also is distinguishable. There, the First Circuit held that the antitrust claims at issue could not be vindicated by means of individual arbitration because the six-figure cost of the expert witnesses needed to prove the claims far outstripped the value of an individual claim. *Id.* at 58-59. The court took pains to distinguish the complex and costly antitrust suit before it from the "not * * * particularly difficult analysis" required to resolve the claim in *Johnson v. West Suburban Bank*, *supra*—namely, "whether the facts about [a specific] transaction do or do not establish a violation" of the Truth in Lending Act. 446 F.3d at 57.

---

[5]    Moreover, to the extent that *Lytle* can be understood to impose a broader rule of Pennsylvania law that forbids class-arbitration waivers, the Third Circuit has held that it is preempted by the FAA. *See Gay v. CreditInform*, __ F.3d. ___, 2007 WL 4410362, at *12, *18-*21 & n.9 (3d Cir. Dec. 19, 2007).

Here, Francis's MCPA claim is much more akin to the claim in *Johnson* than to the complex antitrust allegations in *Kristian*. Moreover, Francis's arbitration agreement provides him with cost-free arbitration and the possibility of recovering damages greater than those authorized by statute, as well as double attorneys' fees. In addition, to the extent that expert fees are reimbursable under the MCPA, an arbitrator would be entitled to award them to a prevailing plaintiff under ATTM's arbitration provision. Indeed, even if such fees were not awardable under the MCPA, ATTM's arbitration provision authorizes the arbitrator to award them to any customer who receives an arbitral award that is greater than ATTM's last settlement offer. ATTM Mot. to Compel Arb., Ex. C (Berinhout Decl. Ex. 9). Accordingly, *Kristian* is inapposite here.

Many of the remaining cases that Francis cites also involved arbitration provisions that imposed excessive costs. *See Lozada*, 91 F. Supp. 2d at 1103 (arbitration clause "ma[de] no provision for the payment of arbitrator costs"); *In re Knepp*, 229 B.R. 821, 837 (Bankr. N.D. Ala. 1999) (refusing to enforce arbitration provision that required consumers to pay between $500 and $7,000 in initial fees, as well as substantial daily costs); *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1176 (N.D. Cal. 2002) (refusing to enforce arbitration provision that "allow[ed] for prohibitive arbitration fees"); *ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1174 (N.D. Cal. 2002) (refusing to enforce arbitration provision containing class waiver because it included "numerous one-sided provisions," including provision requiring consumer to pay excessive costs, that, "[t]aken together, * * * compel the conclusion that the arbitration agreement is unconscionable"); *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161, 1176 (Ohio Ct. App. 2004) (striking down arbitration provision where total fees for an in-person arbitration were

estimated at between $4,000 and $6,000, with an additional $1,250 fee for a written decision, and

indigent claimant could not be assured of a fee waiver); *Luna v. Household Fin. Corp. III*, 236 F.

Supp. 2d 1166, 1178-79 (W.D. Wash. 2002) (refusing to enforce arbitration provision because,

along with other onerous features, it contained a cost-splitting provision under which "a

borrower's cost for arbitration likely would exceed the cost of a court proceeding by at least a

factor of ten"); *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 926 (M.D.

Tenn. 2003) (assuming that "[e]mployees must shoulder the fees of individual arbitration

themselves" and concluding that "[o]ther aspects of the forum," including the arbitration

providers' elimination of rules that would have authorized class arbitrations, "support[ed] a

finding of structural bias in favor of employers").

The rationales of these cases are simply inapplicable to ATTM's arbitration provision,

which makes arbitration cost-free for customers.

**Second**, many of the cases Francis cites also involved arbitration provisions that limited

the arbitrator's authority to award substantive remedies such as damages and attorneys' fees or

placed other restrictions on a consumer's rights that made the arbitration process more onerous

than proceeding in court. None of these impediments are present in ATTM's arbitration

provision.

*Wong*, for example, involved a provision that precluded consumers from recovering

attorneys' fees or consequential or statutory damages (in addition to requiring consumers to pay

some of their own arbitration fees.) *Wong*, No. 05-73922, Docket # 17 (Pl.'s Resp. to Mot. to

Compel Arbitration), at 4-5.

Similarly, the arbitration provision in *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003), not

-13-

only contained a class waiver but also imposed a confidentiality requirement, a shortened statute

of limitations, and a requirement that customers "split the arbitrator's fees" with the company.

*Id.* at 1133, 1151-52. In contrast, the arbitration agreement between Francis and ATTM neither

imposes ***any*** costs of the arbitration forum on customers nor imposes any other obstacles to a

consumer's ability to pursue arbitration.[6]

In *Eagle*, the arbitration provision prohibited consumers from disclosing any information

about an arbitration other than the ultimate order or award, and forbade arbitrators from setting

forth in such an order or award any reasons, findings of fact, or conclusions of law not expressly

requested by a party. 809 N.E.2d at 1182.

In *Whitney*, the Missouri Court of Appeal struck down the arbitration provision at issue

not only because of the requirement that the consumer pay the costs of arbitration (*see* pages 8-9,

*supra*) but also because "the contract contained a provision which prohibited an award of any

incidental, consequential, punitive, or exemplary damages as well as attorneys' fees." 173

S.W.3d at 313. The court found that these provisions, taken together, effectively precluded

consumers from asserting their small individual claims. *See id.* at 313-14. As a Missouri trial

court has held, however, the problems with the Alltel provision at issue in *Whitney* were absent

from an earlier version of ATTM's arbitration provision that contained fewer consumer-friendly

features than the current one:

Cingular's arbitration provision is distinguishable from Alltel's. * * * Alltel's

---

[6]     The Ninth Circuit held that Ting's public policy argument, which relied on a provision of
California's consumer-protection statute that made the right to bring class actions unwaivable
(*see* CAL. CIV. CODE §§ 1751, 1781(a)), was preempted by the FAA because the statute applied
"to such a limited set of transactions" and therefore "is not a law of 'general applicability.'" 319
F.3d at 1148. The MCPA does not make class actions unwaivable (*see* pages 5-6, *supra*), but if
it did, the FAA would preempt that rule for the reasons explained in *Ting*.

arbitration provision forbade an arbitrator from awarding attorneys' fees. By contrast, Cingular's arbitration provision provides for attorneys' fees in a wider array of circumstances than in court actions. Third, Cingular's arbitration provision contains no prohibition on punitive, exemplary, or consequential damages. Under Alltel's arbitration provision, the arbitrator lacked the power or authority to award such damages. Therefore, while Alltel's provision contained several features, apart from its class-action prohibition, that made it difficult for individuals to obtain relief for small claims, Cingular's provision presents no such barriers.

*Blitz*, *supra*, slip op. at 4 (internal quotation marks, citations, footnote, and brackets omitted).

* * * * *

In sum, the cases cited by Francis in support of his blanket assertion that class waivers are unenforceable in all cases ultimately do not support that contention at all. Rather, they illustrate the need to engage in a case-specific inquiry. And, as our review of these decisions demonstrates, ATTM's arbitration provision is distinguishable from all of them because it allows for cost-free arbitration and contains affirmative incentives that encourage customers to pursue arbitration. In short, Michigan public policy does not justify invalidation of a class waiver in an arbitration clause that is as consumer-friendly as this one.

       **3.**     **Francis's insinuation that ATTM's arbitration provision precludes the Attorney General from enforcing the MCPA is misguided.**

Francis also asserts that ATTM's arbitration provision "preclude[s] him from participating in" a class action "initiated by the Michigan Attorney General." Francis Br. at 5. This complaint is entirely hypothetical. In any event, it is clear that ATTM's provision does not (and cannot) preclude the Michigan Attorney General from pursuing a lawsuit against ATTM on behalf of Francis or other Michigan consumers. *See EEOC v. Waffle House*, 534 U.S. 279, 290-

91 (2002).[7]

**B.    If Michigan Public Policy Were Construed To Create A Per Se Rule Against Class Arbitration Waivers, Such A Policy Would Be Preempted By The FAA.**

In our motion to compel arbitration, we explained why a state-law rule that prohibits companies from requiring their customers to arbitrate on an individual basis would be preempted by the FAA.  ATTM Mot. to Compel Arb. at 16-22.  That argument applies whether the rule is based on the doctrine of unconscionability or on state public policy.  Accordingly, for this reason as well the Court should reject Francis's invitation to create a broad public-policy rule forbidding the inclusion of class arbitration waivers in consumer agreements.

## CONCLUSION

Because Francis's motion is both an impermissible method for requesting declaratory relief and substantively meritless, it should be denied, and ATTM's motion to compel and dismiss should be granted.

---

[7]    The Court need not decide whether, if the Michigan Attorney General were to bring a class action, customers would be precluded from participating in that class action.  The MCPA provides the Attorney General with other enforcement tools that would achieve the same practical ends.  *See* MICH. COMP. LAWS ANN. § 445.905 (Attorney General may seek temporary or permanent injunction and court can assess civil fines).  And other prosecuting attorneys may also bring actions under the MCPA.  *Id.* § 445.915.

Dated:  January 31, 2008.                Respectfully submitted,


                                          /s/ Toby A. White
                                         DICKINSON WRIGHT PLLC
                                         Kenneth J. McIntyre (P17450)
                                         Michelle Thurber Czapski (P47267)
                                         Toby A. White (P67530)
                                         Attorneys for Defendant AT&T Mobility, LLC
                                         500 Woodward Ave., Suite 4000
                                         Detroit, MI 48226
                                         (313) 223-3500
                                         kmcintyre@dickinsonwright.com
                                         mczapski@dickinsonwright.com
                                         twhite@dickinsonwright.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

| | |
|---|---|
| E. Powell Miller<br>Marc Newman<br>Ann L. Miller<br>The Miller Law Firm, P.C.<br>950 W. University Drive, Suite 300<br>Rochester, Michigan 48307 | |
| Alan J. Statman<br>Jeffrey P. Harris<br>Statman, Harris & Eyrich, LLC<br>441 Vine Street<br>3700 Carew Tower<br>Cincinnati, Ohio 45202 | |

      /s/ Toby A. White
DICKINSON WRIGHT PLLC
Kenneth J. McIntyre (P17450)
Michelle Thurber Czapski (P47267)
Toby A. White (P67530)
Attorneys for Defendant AT&T Mobility, LLC
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223-3500
kmcintyre@dickinsonwright.com
mczapski@dickinsonwright.com
twhite@dickinsonwright.com

-18-