## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT F. FRANCIS, II, on behalf of himself and of all others similarly situated,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC,**<br><br>     **Defendants.** | **Case No 2:07cv14921**<br><br> **Hon. George Caram Steeh** |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION

Alan J. Statman
Jeffrey P. Harris
W. Kelly Lundrigan
STATMAN HARRIS & EYRICH LLC
441 Vine Street
3700 Carew Tower
Cincinnati, Ohio 45202
(513) 621-2666
(513) 621-4896 (fax)

E. Powell Miller
Marc L. Newman
Ann Miller
THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, Michigan 48307
(248) 841-2200

## <u>TABLE OF CONTENTS</u>

INDEX OF MOST CONTROLLING AUTHORITIES ...................................................................ii

I.   INTRODUCTION .................................................................................................................1

II.  STATEMENT OF FACTS.......................................................................................................2

III. ARGUMENT ........................................................................................................................2

    A.  Plaintiff Would Readily Stipulate To Arbitration On A Class-Wide Basis......................2

    B.  The Federal Arbitration Act Does Not Preempt A Ruling By This Court That
        Defendant's Class Waiver Is Unlawful.............................................................................3

    C.  Provision For Premium Attorney's Fees Is Not Enough To Attract Competent
        Counsel To Accept Complex Claims Against A Multi-Billion Dollar Corporation
        Like AT&T ......................................................................................................................7

    D.  Defendant's Reliance On Misplaced As It Is Copeland v. Katz Is Distinguishable .......12

    E.  Plaintiff Did Not Have Comparable Alternative Sources Of Wireless Cellular
        Services .........................................................................................................................13

    F.  The Date Purporting To Evidence The Consumer-Friendliness Of Defendant's
        Consumer Dispute Resolution Process Is Meaningless Without Context ......................15

    G.  Class Arbitration Furthers The Efficiency And Expeditiousness Of Arbitration ..........16

    H.  The Class Waiver Prohibits The Award Of Class-Wide Injunctive Relief....................18

    I.  The Class Waiver Strips Consumers Of One Of The Most Powerful Benefits Of
        Class Actions, Which Is Class Notice.............................................................................19

IV.  CONCLUSION..................................................................................................................20

## <u>INDEX OF MOST CONTROLLING AUTHORITIES</u>

*Bradberry v. T-Mobile,* 2007 U.S. Dist. LEXIS 34826 (N.D. Cal. 2007)

*Carnegie v. Household Int'l, Inc*., 376 F.3d 656 (7th Cir. Ill. 2004)

*Chun Wing Wong v. T-Mobile USA, Inc*., 2006 U.S. Dist. LEXIS 49444 (E.D. Mich. July 20, 2006)

*Doctor's Assocs. v. Casarotto*, 517 U.S. 681 (U.S. 1996)

*Fiser v. Dell,* 2008 N.M. Lexis 419 (N.M. 2008)

*Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250 (Ill. 2006)

*Kristian v. Comcast Corp.,* 446 F.3d 25 (1st Cir. Mass. 2006)

*Lowden v. T-Mobile USA*, 512 F.3d 1213 (9th Cir. Wash. 2008)

*Muhammad v. County Bank of Reheboth Beach*, 912 A.2d 88 (N.J. 2006)

*Scott v. Cingular Wireless LLC*, 161 P.3d 1000 (Wash. 2007)

*Shroyer v. New Cingular Wireless Servs*., 498 F.3d 976 (9th Cir. Cal. 2007)

*Steiner v. Apple Computer,* 2008 U.S. Dist. LEXIS 40453 (N.D. Cal. March 12, 2008)

*Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ*., 489 U.S. 468 (1989)

## I.    INTRODUCTION

Plaintiff Robert F. Francis, II ("Plaintiff") brings this action on behalf of himself and a putative nationwide class of consumers who are, or were, subscribers to Defendant AT&T Mobility LLC's ("Defendant") wireless services. Plaintiff alleges that Defendant breached its contracts and engaged in unfair, deceptive and misleading practices by: (1) marketing its wireless plans as including free domestic roaming service when no domestic roaming service was provided at all, (2) marketing the plans as including free international roaming for text messages when Defendant did not have the ability to determine where customers were physically located, and (3) marketing the plans as including "unlimited" mobile-to-mobile service for calls made to and from Defendant's customers within a specified area when Defendant did not have the ability to determine where customers were physically located and, in fact, Defendant charged Mobile-To-Mobile calls against the customer's "Anytime Minutes."

After Plaintiff filed his Motion to Declare Class Waiver Unlawful ("Plaintiff's Motion"), Defendant moved this Court to Compel Plaintiff to arbitrate his claims on an individual basis ("Defendant's Motion"). Defendant bases its Motion on a provision of its arbitration clause that bans class actions both in the judicial and arbitral forum. Plaintiff does not dispute that Defendant could have lawfully required arbitration on a class-wide basis. Rather, the issue is Defendant's attempt to compel individual arbitration (as well as individual actions in court) through an unlawful class waiver. Defendant has further gamed the system such that if the class waiver is unlawful, the arbitration provision self-destructs.

Because this case involves exceedingly complex claims, both legally and technologically, for individually small sums of money, the class action ban effectively exculpates Defendant from liability. Thus, the circumstances of this case dictate that Plaintiff's claim proceed "as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

1

## II.    STATEMENT OF FACTS

Plaintiff incorporates by reference the Statement of Facts contained in Plaintiff's Motion to Declare Class Action Waiver Unlawful.

## III.    ARGUMENT

### A.    Plaintiff Would Readily Stipulate To Arbitration On A Class-wide Basis

Plaintiff would readily stipulate to arbitration so long as consumers may aggregate claims for similar injuries based on the same or substantially similar facts together into one efficient collective class arbitration. Defendant moves to compel arbitration, but only on terms that promote corporate interests: individualized arbitration. Defendant is not "pro arbitration." Defendant is anti-class relief, be it in court or in arbitration.

Defendant wants to avoid the aggregation of consumer claims, either in the arbitral or judicial forum, because class actions threaten the corporation's financial interests. Defendant's hypocrisy is belied by the terms of its own arbitration clause. While a court may generally sever an unlawful class waiver, thus preserving the underlying arbitration agreement,[1] a remedy that would comport with Defendant's "pro-arbitration" stance, severance is not an option here. The arbitration clause reads, "[t]he arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a representative or class proceeding. If this specific proviso is found to be unenforceable, then the entirety of this arbitration provision shall be null and void."  (Pl. Mot., Exs. A and B).

Defendant has structured the Agreement so that the arbitration provision "self-destructs" if the class waiver is unenforceable, destroying the arbitration agreement so that such claim must be brought in court. Plaintiff filed this action in Court because Defendant's class action waiver is unenforceable and, therefore, under Defendant's own terms, this Court is the proper forum.

---

[1]  See, e.g., *Gatton v. T-Mobile USA, Inc*., 2003 U.S. Dist. LEXIS 25922.

Defendant's "pro-arbitration" stance only exists so long as Defendant can fix the rules of the game to benefit the corporation, which comes at the expense of consumers.

**B.    The Federal Arbitration Act Does Not Preempt A Ruling
By This Court That Defendant's Class Waiver Is Unlawful**

Defendant argues that if, under Michigan law, the class waiver is declared unconscionable,[2] the Federal Arbitration Act ("FAA") would preempt Michigan law, forcing the Court to enforce an unconscionable contract provision. (Def. Mot. 16). The FAA does not mandate such an inequitable result.

The FAA states that arbitration agreements, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USCS §2. The Supreme Court of the United States has made clear that, "generally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening §2." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (U.S. 1996).

Further, the Supreme Court has made clear that all that is required under the FAA is that arbitration agreements, "be placed 'upon the same footing as other contracts.'" *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)). The FAA does not mandate special treatment for arbitration agreements. As the Supreme Court of Illinois found in considering a motion to compel individual arbitration filed by Cingular Wireless, "the FAA does not require state courts, when applying state law to a question of the enforceability of a particular contract, to necessarily reach an outcome that encourages individual arbitration." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 262 (Ill. 2006).

With regard to Defendant's FAA express preemption argument, the United States Supreme Court has held that, "The FAA contains no express preemption provision, nor does it

_____

[2] Plaintiff incorporates by reference the arguments made in his Motion to Declare Class Action Waiver Unlawful.

reflect a congressional intent to occupy the entire field of arbitration." *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989); *see also Kinkel,* 857 N.E.2d at 263. ("In sum, the FAA neither expressly nor impliedly preempts a state court from holding that an arbitration clause or a specific provision within an arbitration clause is unenforceable; it merely frames the issue by requiring that a state court examine the disputed provision in the same manner that it would examine any contract.")

The Ninth Circuit has agreed, stating in *Ting v. AT&T*, another case in which a court struck down a class waiver in a wireless service contract, "the FAA preempts state laws of limited applicability . . . but we follow well-settled Supreme Court precedent in rejecting the proposition that unconscionability is one of those laws." 319 F.3d 1126, 1150 n.15 (9th Cir. Cal. 2003); *see also Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 n. 15 (9th Cir. Cal. 2003).

Defendant has unsuccessfully attempted to defend the same, or substantially the same, arbitration provision and class waiver at issue here in other cases. This includes *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976 (9th Cir. Cal. 2007)*,* and, most recently, *Steiner v. Apple Computer,* 2008 U.S. Dist. LEXIS 40453 (N.D. Cal. March 12, 2008) (attached hereto as Exhibit A).

In *Shroyer*, the Ninth Circuit stated that, "to hold that California unconscionability law may be applied only to invalidate a class action waiver, but not a class arbitration waiver, would place arbitration on a different footing than other contracts, in direct contravention of this principal purpose of the Federal Arbitration Act." *Shroyer*, 498 F.3d at 990. The Ninth Circuit goes on to adopt the reasoning of the California Supreme Court in *Discover Bank v. Superior Court of Los Angeles*, 36 Cal. 4th 148, 113 P.3d 1100 (Cal. 2005), stating, "the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that does not specifically apply to arbitration agreements, but to

4

contracts generally." *Id.* at 988 (quoting *Discover Bank*, 36 Cal. 4th at 165). Further, "to the extent that California law requires Cingular to permit its consumers to bring class arbitration proceedings, it is actually 'encouraging alternative dispute resolution outside the courtroom.'" *Id.* at 990. Defendant does not further the goals of the FAA with a self-destructing arbitration clause.

In noting that other courts have rejected the same FAA preemption argument that Defendant makes here, the Ninth Circuit stated that, "Cingular offers no authority or support for the main premise of its argument that the purposes and objectives of the Federal Arbitration Act encourage individual arbitration and disfavor class arbitration." *Id.* at 990 (citing *Scott v. Cingular Wireless LLC*, 161 P.3d 1000, 1008 (Wash. 2007); *Kinkel,* 857 N.E.2d at 262). As it could not in *Shroyer*, Defendant offers no authority to support the theory that individual arbitration, but not class arbitration, furthers the goals of the FAA. *See also Lowden v. T-Mobile USA*, 512 F.3d 1213, 1221 (9th Cir. Wash. 2008) ("T-Mobile's claim, in essence, that the FAA requires a state to enforce a class action waiver merely because it lies within an arbitration agreement – whereas a state would be free to find the same waiver to be invalid in the litigation context – contravenes the FAA's mandate of an 'equal footing' between arbitration and other forms of dispute resolution.")

In *Steiner*, the United States District Court for the Northern District of California denied a motion to compel arbitration filed by AT&T based on the same arbitration provision at issue here. 2008 U.S. Dist. LEXIS 40453 (N.D. Cal. March 12, 2008). After *Shroyer*, Defendant revised its arbitration clause. However, the "improved" clause still contained the unlawful class waiver, which is what the Ninth Circuit found objectionable the first time it considered the issue. As the Ninth Circuit did in *Shroyer*, the *Steiner* court struck down the waiver. Like the Ninth Circuit, *Steiner* rejected Defendant's argument that the FAA preempted state unconscionability law.

In addressing Defendant's preemption argument, the *Steiner* court first stated that, "the purpose of the FAA is to enforce arbitration agreements, 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" 2008 U.S. Dist. LEXIS 40453 at *50. The *Steiner* court determined that the unconscionability laws of Washington (like the unconscionability laws of California in *Shroyer)*, did not invalidate the class arbitration waiver because it was part of an arbitration agreement, which would contravene the FAA. Rather, the class arbitration waiver was invalidated because under the state's generally applicable unconscionability laws, "the waiver operated in an unconscionable manner." 2008 U.S. Dist. LEXIS 40453 at *51. Like California's and Washington's unconscionability laws, Michigan's unconscionability laws apply equally to contracts in the judicial and arbitral context.

In *Scott v. Cingular Wireless*, which addressed a prior version of Defendant's arbitration provision, the Supreme Court of Washington reiterated the mandates of the Supreme Court of the United States, stating that, "Congress simply requires us to put arbitration clauses on the same footing as other contracts, not make them the special favorites of the law." 161 P.3d 1000, 1008 (Wash. 2007) (citing *Sherk,* 417 U.S. at 511). The *Scott* court ultimately found that the class waiver was unconscionable, which is a basis for revocation of any contract, and was not preempted by the FAA. *See also Bradberry v. T-Mobile,* 2007 U.S. Dist. LEXIS 34826 (N.D. Cal. 2007) (attached hereto as Exhibit B); *Laster v. T-Mobile United States, Inc.,* 407 F. Supp. 2d 1181, 1183 (S.D. Cal 2005) (aff'd by *Laster v. T-Mobile USA, Inc.,* 2007 U.S. App. LEXIS 25265 (Cal. Oct. 25, 2007)).

And in *Fiser v. Dell,* the Supreme Court of New Mexico struck down a class waiver, stating that while the FAA prevents states from singling out arbitration provisions, "it does not give arbitration provisions special protection either. It only requires that they be placed 'upon the same footing as other contracts.'" 2008 N.M. Lexis 419, *19 (N.M. 2008) (attached hereto as

Exhibit C) (quoting *Sherk,* 417 U.S. at 511). And in *Gentry v. Superior Court*, the Supreme Court of California rejected the argument that, "compelling class arbitration in the appropriate case violates the FAA". 42 Cal. 4th 443, 461 (Cal. 2007).

While the FAA preempts state laws that single out arbitration for special scrutiny, Defendant cannot launder otherwise illegal contract terms, like the class waiver, by invoking the term "arbitration." As the West Virginia Supreme Court held in a decision striking down an arbitration clause that contained a contractual ban on class actions, the FAA does not allow for this kind of escape from state contract liability "merely because the prohibiting or limiting provisions are part of or tied to provisions in the contract relating to arbitration." *Dunlap v. Berger,* 567 S.E.2d 265, 280 (W. Va. 2002).

## C.    Provision For Premium Attorney's Fees Is Not Enough To Attract Competent Counsel To Accept Complex Claims Against A Multi-Billion Dollar Corporation Like AT&T

By touting the "consumer-friendliness" of its arbitration agreement, including the "attorney premium" provided for in certain limited instances, Defendant strays from the discrete issue, the lawfulness of the class waiver.[3]  However, these "premium" attorney's fees are an illusory benefit. Further, the prospect of double attorney's fees (assuming the claim even qualifies for such fees) cannot overcome the overwhelming disincentives for attorneys to accept complex claims on behalf of consumers like Plaintiff against a corporation with the financial resources and legal expertise of Defendant and its corporate counsel. This is particularly true when the resources and skill necessary to prove the claim are enormous and the claim is

---

[3] Defendant challenges Plaintiff for filing his Motion, stating that he did so only "after being informed that ATTM intended to file this motion to compel and dismiss" (Def. Mot., p. 1, Fn 1) and that it was "entirely unnecessary." (*Id.*) Defendant has it backwards. Plaintiff's Motion isolates the dispositive issue, which is the legality of the class waiver. Defendant's Motion to Compel Arbitration is moot, by the language of its own arbitration clause, if this Court strikes the class waiver because it renders the arbitration provision null and void.

relatively small, as is the case with Plaintiff whose damages, to the extent they may be ascertained at this stage of the proceedings, are only approximately $1,143. (Exhibit D, Decl. of Robert F. Francis, II, ¶20)

Defendant's arbitration provision provides for what it calls "the attorney premium" if certain preconditions are met:

> If, after the arbitrator finds in the claimant's favor on the merits, the arbitrator issues an award that is equal to or less than the greater of a) $5,000 or b) the maximum claim that may be brought in small claims court in the county of your billing address and greater than the value of Cingular's last written settlement offer made before an arbitrator was selected, Cingular will pay your attorney, if any, twice the amount of attorneys' fees your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

(Pl. Mot., Ex. B).

In its Motion, Defendant goes so far as to say that it has a "powerful incentive" to make a generous settlement offer or "it will face a serious risk of having to pay the customer $5,000, plus double attorney's fees." (Def. Mot. p. 15)  However, to a multi-billion dollar corporation like AT&T, $5,000, plus double attorney's fees, is trivial compared to the amount it saves in erasing its exposure to class actions and class arbitrations, for which it may be liable for millions of dollars in damages to consumers, as well as class-wide injunctive relief.

In addressing the precise "attorney premium" at issue in this case, the court in *Steiner* stated, even in light of the attorney fee premium, "it appears AT&T's class arbitration waiver greatly reduces the aggregate liability it otherwise would face due to exacting 'small sums from millions of customers.'"  2008 U.S. Dist. LEXIS 40453 at *36-37.

Further, the "attorney fee premium" is illusory because a consumer's right to attorney's fees is entirely contingent upon the amount of Defendant's settlement offer, over which Defendant has complete control. The *Steiner* court agreed, stating, "this 'incentive' argument

8

ignores the critical fact that these incentives are entirely illusory: they evaporate entirely if AT&T offers the plaintiff a 'settlement payment' equal to his or her loss." 2008 U.S. Dist. LEXIS 40453 at *37. Further, the court stated:

> The Attorney Premium does little to nothing to induce any attorney to take on a $114.95 [the amount in dispute in this particular case] dispute. Quite simply, it is unclear that such a case would generate significant fees, as it would ostensibly take fewer billable hours to work up. Moreover, given that many plaintiffs lawyers work on contingency, they would more likely focus their efforts on cases with a higher potential recovery. . . it is unclear the Attorney Premium or the attorney's fees provisions of AT&T's Arbitration Agreement would significantly increase the amount of attorney participation in tiny claims arbitrated against AT&T. As a result, the agreement is not an effective substitute for a class action. . . Thus, the Attorney Premium . . . does not mitigate the exculpatory nature of the class action waiver.

2008 U.S. Dist. LEXIS 40453 at *42-45.

Plaintiff's experts, Mark Romano and Gregory D. Hanley, are consumer law attorneys practicing in the State of Michigan. They have experience that makes them uniquely qualified to opine about what types of cases consumer lawyers will and will not accept on an individualized basis in the Michigan legal market. These experts base their opinions not only upon their personal knowledge, but also upon their review of the Amended Complaint and Defendant's Motion to Compel Arbitration. These Declarations come from practitioners who have strong foundations to speak as to what the market is (and is not) for cases of this sort.

Mark Romano is a consumer law attorney in private practice in Farmington Hills, Michigan. He is a partner at Romano Stancroff & Mikhov PC. (Exhibit E, Decl. of Mark Romano, ¶3). He states that often he cannot take consumer cases like Plaintiff's because "the amount of money at involved is typically very small and would not justify the amount of time spent pursuing the matter." (Exhibit E, Decl. of Mark Romano, ¶9). The prospect of receiving a premium attorneys' fee award "would not be sufficient to entice prudent customer counsel to agree to take such a case." (Exhibit E, Decl. of Mark Romano, ¶20). Mr. Romano would not

accept Plaintiff's claim on an individual basis and he does not believe other consumer attorneys would either. (Exhibit E, Decl. of Mark Romano, ¶¶11, 17, 18). The prospect of a "premium" attorney fee award would not impact his decision to decline Plaintiff's case. (Exhibit E, Decl. of Mark Romano, ¶17).

Beyond insufficient attorney's fees in relation to the time and effort necessary to pursue complex claims like Plaintiff's, Mr. Romano points out that the financial costs of proving the claims in this case would be considerably greater and more difficult than those involved in the types of fee-shifting cases that consumer attorneys regularly handle. (Exhibit E, Decl. of Mark Romano, ¶19). The litigation of the complex claims in this case is very risky and the only type of incentive that would motivate prudent counsel to make that degree of investment and to take the risk of this litigation are those commonly associated with class action litigation. (Exhibit E, Decl. of Mark Romano, ¶20.) Mr. Romano opines that even with the promise of a sufficient fee award, the amount of investment needed to handle a case like this would be potentially ruinous to his practice and his own financial well-being. (Exhibit E, Decl. of Mark Romano, ¶21.)

Mr. Romano's position is echoed by consumer attorney Gregory D. Hanley, a former partner in Honigman Miller Swartz & Cohn and a named partner in Kickham Hanley P.C. (Exhibit F, Decl. of Gregory D. Hanley, ¶3) Mr. Hanley notes that few consumers have the resources required to pay the cost of pursuing a claim like Plaintiff's. (Exhibit F, Decl. of Gregory D. Hanley, ¶11.) Like Mr. Romano, the prospect of a premium attorney fee award would not impact his decision to decline the case. (Exhibit F, Decl. of Gregory D. Hanley, ¶12.) Mr. Hanley agrees that based on his familiarity with attorneys experienced in handling consumer matters in Michigan, a claimant like Plaintiff would be unsuccessful in finding Michigan counsel willing to represent him on a contingent fee basis. (Exhibit F, Decl. of Gregory D. Hanley, ¶14.) Further, Mr. Hanley states that in his experience, no competent attorney would take on a matter

that involved less than $5,000 on a contingency basis, even with the potential for double attorney's fees. (Exhibit F, Decl. of Gregory D. Hanley, ¶15.)

The doubts expressed by Mr. Romano and Mr. Hanley that "premium" attorney's fees are enough to attract competent counsel for small claims have been echoed by courts nationwide. As the United States Supreme Court noted in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997), "A class action solves this problem [of small individual monetary losses] by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." The Supreme Court of New Jersey similarly observed, "[the availability of attorneys fees] is not dispositive in the instant case because the damages sought by Muhammad and those she seeks to represent are small. The availability of attorney's fees is illusory if it is unlikely that counsel would be willing to undertake the representation." *Muhammad v. County Bank of Rehoboth Beach*, 912 A.2d 88, 100 (N.J. 2006). And in considering class waivers, the Supreme Court of California has stated:

> Nor are we persuaded by the rationale stated by some courts that the potential availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the problem posed by such class action waivers. There is no indication other than these courts' unsupported assertions that, in the case of small individual recovery, attorney fees are an adequate substitute for the class action or arbitration mechanism.

*Discover Bank*, 36 Cal. 4th at 162 (internal citations omitted); *see also Gentry*, 42 Cal. 4th at 461. The availability of attorney's fees does not alleviate the reality that class actions augment an individual's ability to retain competent counsel, particularly in the consumer context.

Defendant may have anticipated the reluctance of attorneys to take individual claims because it has posted on its website what it describes in its Motion to Compel as, "a layperson's guide on how to arbitrate a claim." (Def. Mot. p. 5; Def. Mot., Ex. C, Ex. 10.) And the "Questions and Answers" portion of the layperson's guide, Defendant states that, "Either you or

AT&T may be represented by an attorney. However, there is no requirement that you have an attorney to participate in arbitration." (Def. Mot., Ex F, Ex. 10.) This suggests that Defendant likely anticipated that many consumers would arbitrate *pro se*. And with fewer attorneys, Defendant reaps another benefit of its class waiver, which is paying fewer attorneys' fee awards.

**D.**    **Defendant's Reliance On *Copeland v. Katz* Is Misplaced As It Is Distinguishable**

Defendant argues that this Court should reject the reasoning in *Chun Wing Wong v. T-Mobile USA, Inc.*, in which this Court struck a class waiver in wireless service provider T-Mobile's arbitration clause, in favor of the Court's reasoning in an earlier case, *Copeland v. Katz*, which involved a class waiver not in the wireless service provider context (as *Wong* was), but rather in a retail installment contract involving a vehicle. (Def. Mot. 11-12.) *However,* while *Copeland* is distinguishable, *Wong* is analogous and directly on point.

In *Copeland*, the Court, in evaluating procedural unconscionability, stated that, "Plaintiff has failed to demonstrate that he could not have obtained a vehicle from another seller who would not have required Plaintiff to sign an arbitration agreement." *Copeland v. Katz*, 2005 U.S. Dist. LEXIS 31042, *6 (E.D. Mich. November 28, 2005) (attached hereto as Exhibit G). As explained further in Section E below, in the case at bar (as was the case in *Wong*), Plaintiff did not have meaningful alternative sources with which he could contract for wireless services that did not impose an arbitration clause and class waiver.

The *Copeland* Court goes on to say, "Plaintiff has not provided any evidentiary support for his claim that he would not have been able to purchase the vehicle without agreeing to the arbitration clause." *Id.* *6-7. As was addressed in Plaintiff's Motion, the arbitration provision and class waiver in this case were contained in a boilerplate, non-negotiable contract of adhesion drafted by the corporate Defendant. The Court found that the arbitration clause and class waiver

were not procedurally unconscionable. And while finding that the class waiver was not substantively unconscionable, the Court noted that the Sixth Circuit had yet to address the issue.

While Plaintiff incorporates by reference the arguments set forth in his Motion regarding the import of *Wong*, Plaintiff notes that Judge Edmunds in *Wong* distinguished *Copeland*, stating, "One recent case holds that the preclusion of class actions does not render an arbitration agreement substantively unconscionable. (internal citation omitted) While the question of substantive unconscionability is related, it is distinct from the issue presented here. Moreover, *Copeland* did not involve the MCPA, which expressly provides for class actions." *Chun Wing Wong v. T-Mobile USA, Inc*., 2006 U.S. Dist. LEXIS 49444, *10 (E.D. Mich. July 20, 2006) (attached to Pl. Mot. at Ex. D).

**E.    Plaintiff Did Not Have Comparable Alternative
        Sources Of Wireless Cellular Services**

Defendant argues that to establish procedural unconscionability, Plaintiff must show that Defendant's competitors did not offer a "realistic alternative" to Defendant's service. (Def. Mot. 9.) The critical flaw in Defendant's argument is that of the top ten U.S. wireless service providers, which have a combined subscriber base of over 241 million customers, all have terms and conditions that include mandatory arbitration clauses and class waivers. (Exhibit H, Decl. of Paulette Terry ¶2-13; Exs. A-L). These service providers are: Verizon Wireless, Sprint Nextel Corp., T-Mobile USA Inc., Alltel Corp., U.S. Cellular, MetroPCS Communications Corp., Leap Wireless International, Inc., Dobson Communications Corp., and SunCom Holdings. *Id. See also* FCC, Twelfth Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services, (Feb. 4, 2008), P. 15-16 ("each of the four national operators [AT&T, Sprint Nextel, T-Mobile, and Verizon] has networks covering at least 235 million

people (out of 303 million), while the next largest provider covers fewer than 80 million people.")

According to Defendant's 10Q for the period ending September 30, 2006, the most recent available on the SEC's EDGAR website, "we served 58.7 million voice and data subscribers over our cellular and PCS networks and were the largest provider of wireless voice and data communications services in the U.S., based on the number of wireless subscribers." (Exhibit I, Decl. of Elizabeth L. Hutton, Ex. D) Defendant lists its top three national competitors: Verizon Wireless, Sprint Nextel, and T-Mobile. (Exhibit I, Decl. of Elizabeth L. Hutton, Ex. D.)

Defendant argues that Plaintiff had at least two alternative wireless service providers with which he could have contracted for wireless services that do not have contracts with an arbitration clause or a class waiver: Virgin Mobile and PowerNet. (Def. Mot. 10.) However, neither Virgin Mobile, nor PowerNet, is a comparable alternative to Defendant.

According to Virgin Mobile's most recent 10Q, the company offers, "prepaid, or pay-as-you-go wireless communications services, including voice, data, and entertainment content, without owning a wireless network." (Exhibit I, Decl. of Elizabeth L. Hutton, Ex. C). Virgin Mobile does not offer roaming service. (Exhibit H, Decl. of Paulette Terry, Ex. M). In fact, its coverage map indicates, "we have great coverage, but if you wander out of it, your phone is not going to work." (Exhibit I, Decl. of Elizabeth L. Hutton, Ex. E.) Virgin Mobile is not a comparable alternative.

Little information is available about "PowerNet." The only company on EDGAR beginning with the term "PowerNet" is "PowerNet Global Communications." The only filing is a Form 425 from March, 2003. (Exhibit I, Decl. of Elizabeth L. Hutton, ¶7, Exs. F and G.) No further information is available on EDGAR, suggesting that it is a private company. (Exhibit I, Decl. of Elizabeth L. Hutton, ¶7; Exs. F and G.)

The web link to PowerNet's purported coverage map referenced in the Decl. of Sarah Sulkowski in support of Defendant's Motion only redirected the user to the PowerNet Global Communications homepage, http://www.powernetglobal.com/. (Exhibit I, Decl. of Elizabeth Hutton ¶8.)   The coverage map attached as Exhibit 2 to the Decl. of Sarah Sulkowski has no legend so it is unclear what the extent or availability of coverage for PowerNet's wireless services is. Virgin Mobile and PowerNet are not comparable alternatives to the top wireless service providers, all of which require arbitration and class waivers.

**F.    The Data Purporting To Evidence The Consumer-Friendliness Of Defendant's Consumer Dispute Resolution Process Is Meaningless Without Context**

Throughout its Motion, Defendant touts the efficiency of its consumer dispute resolution process, from the first customer contact with Defendant's "consumer care department" through individualized arbitration.  (Def. Mot. 3-5.) In support, Defendant incorporates the Declaration of Neal S. Berinhout, in which Defendant's associate general counsel offers facts and figures purporting to show why class relief is unnecessary. These facts and figures include the assertion that Defendant's customer service representatives dispensed "about $119 million" in credits for customer concerns and complaints, that between January and October, 2007 Defendant received "about 500" notices of disputes or demands for arbitration, and that in 2005 and 2006, "about 850" claims were brought against Defendant in small claims court. (Def. Mot., Ex. C, Decl. of Neal S. Berinhout ¶¶21, 23, 26.) There is no context in which to evaluate the significance of these assertions.

The Court in *Steiner* considered the same arbitration provision and the same class waiver and, it would appear, the same or substantially similar declarations in support. However, in evaluating the utility of the facts and figures, the Court stated that they serve no useful purpose because they have no context:

15

AT&T attempts to provide some statistics indicating the Arbitration Agreement works: In September 2007, its customer service personnel provided $119 million in manual credits, and in some unspecified prior 12-month period, they provided $1 billion in manual credits. Berinhout Decl. P. 16. Between January and October 31, 2007, AT&T received over 500 notices of dispute, *Id*. P 20, and in 2005 and 2006, it was sued "about 850" times in small claims court nationwide. *Id*. P 21. Unfortunately, AT&T provides no meaningful context in which the Court can assess these figures for any useful purpose. Thus, the Court can only guess if these figures are high or low, or if they indicate consumers are pleased with AT&T, or ignorant of their rights and remedies, or somehow frustrated in vindicating them.

*Steiner*, 2008 U.S. Dist. LEXIS 40453, *41-42.

The same lack of context is present here. The facts and figures do nothing to evidence whether customers are or are not pleased with how Defendant addresses their claims. However, Defendant has a subscriber base of 65.7 million customers. (Exhibit H, Decl. of Paulette Terry, Ex. A.) Five-hundred notices of dispute and 850 cases filed in small claims court strongly suggest that only a tiny percentage of customers have pursued individual consumer claims.

## G.    Class Arbitration Furthers The Efficiency And Expeditiousness Of Arbitration

Defendant argues that "class action procedures are inherently irreconcilable with the benefits that arbitration was designed to achieve – speed, simplicity, cost savings, informality, and reduced adversariality." (Def. Mot. 21.) However, by prohibiting the aggregation of similar claims, the natural consequence is a multiplicity of suits asserting the same causes of action based on the same underlying facts with duplicative administrative costs and attorney's fees for both plaintiffs and defendants, which is the antithesis of efficiency and cost-effectiveness.

The United States Supreme Court in *Green Tree Financial Corp. v. Bazzle* implicitly endorsed class arbitration procedures as consistent with the Federal Arbitration Act.[4] 539 U.S.

---

[4] In response to *Bazzle*, on October 8, 2003, the American Arbitration Association, the entity selected by Defendant to administer arbitrations stemming from the contract at issue, issued specific rules governing class arbitrations. (Exhibit I, Decl. of Elizabeth L. Hutton, Ex. A.) Rule 2(a) of the Supplementary Rules for Class Arbitrations indicates that there is a national

444 (2003). In light of *Bazzle*, the Ninth Circuit has held that, "like other courts, we cannot accept Cingular's argument that class arbitration 'conflicts with the FAA when the Supreme Court has recognized the arbitrability of class claims' under the Federal Arbitration Act in *Bazzle*." *Shroyer*, 498 F.3d at 990. Regarding the merits of class arbitration, the Ninth Circuit goes on to say:

> We reject Cingular's contention that class proceedings will reduce the efficiency and expeditiousness of arbitration in general. If anything, when millions of customers (or hundreds of thousands or even lesser numbers) seek compensation based on the same legal theories and factual allegations, a class arbitration proceeding is simpler, cheaper, and faster for both the consumers and the defendant company, particularly when one considers the enormous administrative costs and attorney's fees that a company faces in defending an extremely large number of individual claims. Similarly, because the use of class proceedings will enable far greater numbers of individuals to take part in and benefit from arbitration, we conclude that class arbitrations further the FAA's purpose of encouraging alternative dispute resolution.

*Shroyer*, 498 F.3d at 990-991. Further, the Court stated that it did not "foresee class arbitration increasing the average cost of arbitration for large numbers of small-value claims, either for companies or consumers, and it may actually reduce the cost per claim." *Id.*

The First and Seventh Circuits have similarly held, in the words of Judge Posner, that, "The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $ 30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative--no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied--to no litigation at all." *Carnegie v. Household Int'l, Inc*., 376 F.3d 656, 661 (7th Cir. Ill. 2004); *Kristian v. Comcast Corp.,* 446 F.3d 25, 54 (1st Cir. Mass. 2006).

---

roster of class arbitration arbitrators, indicating that class arbitrations occur at least frequently enough to necessitate a roster of specialized arbitrators. (Exhibit I, Decl. of Elizabeth L. Hutton, Ex. B.)

In the employment context, the Supreme Court of California has stated, "Although we agree at least in theory with Circuit City that arbitration can be a relatively quick and inexpensive method of dispute resolution, the requirement that numerous employees suffering from the same illegal practice each separately prove the employer's wrongdoing is an inefficiency that may substantially drive up the costs of arbitration and diminish the prospect that the overtime laws will be enforced." *Gentry v. The Superior Court*, 165 P.3d 556 (Cal. 2007). The same is true of arbitrating a multiplicity of duplicative individual claims in the consumer context.

In *Muhammad v. County Bank of Rehoboth Beach, Delaware*, the Supreme Court of New Jersey recognized of class treatment, "there is the additional justification that a class action proceeding 'can aid the efficient administration of justice by avoiding the expense in both time and money, of relitigating similar claims." 912 A.2d 88, 98 (N.J. 2006) (internal citation omitted). And in *Steiner*, the court rejected the argument that individual arbitrations were as efficient as a class action, stating that, "in order for AT&T to prevail, it must demonstrate it is more efficient for hundreds of thousands, if not millions, of iPhone users to individually dispute the $114.95 in charges, through arbitration or small claims courts, rather than in one class action." *Steiner*, 2008 U.S. Dist. LEXIS 40453 *45. The court found that AT&T could not show that individualized arbitration was more efficient than class arbitration. Nor can Defendant make such a showing here.

**H.     The Class Waiver Prohibits The Award Of Class-Wide Injunctive Relief**

While Defendant claims that under the "improved" arbitration clause, "Arbitrators can award the same damages and relief that a court can award," that is not accurate. (Pl. Mot., Ex. B.) The "improved" arbitration clause explicitly limits the relief an arbitrator may award, stating, "the arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." (Pl.

Mot., Ex. B.) Defendant even concedes that, "the arbitrator is empowered to award injunctive and declaratory relief, albeit on an individualized basis." (Def. Mot., 15.) In consumer actions like the one at bar, one of the most socially valuable remedies is <u>class-wide</u> injunctive relief.

Individualized injunctive relief has the perverse result that Defendant may be enjoined from engaging in unlawful conduct as to a particular customer, but may continue to engage in that same behavior as to its millions of other customers. So whereas one class action or class arbitration could result in class-wide injunctive relief, under Defendant's contract, the same relief may only be achieved if each of its millions of customers brings their own individual claims.

## I.    The Class Action Waiver Strips Consumers Of One Of The Most Powerful Benefits of Class Actions, Which Is Class Notice

Forcing consumers to bring claims on an individual basis leads to the inequitable result that only those consumers with the means, the motivation, and knowledge to recognize that they have been injured will ever be compensated. This lack of knowledge is typical in consumer matters because individual consumers have little knowledge concerning the laws governing consumer transactions and the potential claims that they may have. (Exhibit E, Decl. of Mark Romano, ¶13; Exhibit F, Decl. of Gregory D. Hanley, ¶8.)

With regard to this particular claim, most consumers would be unaware of the wrongdoing because most are not capable or motivated enough to engage in the independent research necessary to discover that their claims exist. (Exhibit E, Decl. of Mark Romano, ¶14; Exhibit F, Decl. of Gregory D. Hanley, ¶9.) Only a small percentage of the members of the putative class at issue likely are aware of their claims. (Exhibit E, Decl. of Mark Romano, ¶12; Exhibit F, Decl. of Gregory D. Hanley, ¶7.) See *Muhammad*, *supra*; *Gentry v. Superior Court*, 165 P.3d 556 (Cal. 2007); *In re Fedex Ground Package Sys.*, 2008 U.S. Dist. LEXIS 28010 (N.D. Ind. Apr. 4, 2008); *Macarz v. Transworld Sys.*, 201 F.R.D. 54, 57 (D. Conn. 2001).

## IV.   <u>CONCLUSION</u>

WHEREFORE, for all of the reasons set forth above and in its Motion to Declare Class Waiver Unlawful, this Court should deny Defendant's Motion to Compel Arbitration and Dismiss Action seeking to compel Plaintiff to individually arbitrate his claims. As Defendant has consciously chosen to draft its clause so that the entire arbitration clause self-destructs if the class waiver is declared unlawful, this Court should deny Defendant's Motion in its entirety.

Respectfully submitted,

   /s/ Ann L. Miller
E. Powell Miller (P39487)
Marc L. Newman (P51393)
Ann L. Miller (P43578)
THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, Michigan 48307
(248) 841-2200
alm@millerlawpc.com

Alan J. Statman
Jeffrey P. Harris
W. Kelly Lundrigan
STATMAN, HARRIS & EYRICH, LLC
441 Vine Street
3700 Carew Tower
Cincinnati, Ohio 45202
(513) 621-2666
jharris@statmanharris.com

Trial Attorneys for Plaintiff and Plaintiff Class

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel:

> Kenneth J. McIntyre
> Michelle Thurber Czapski
> Toby A. White
> DICKINSON WRIGHT PLLC
> 500 Woodward Ave., Suite 4000
> Detroit, MI 48226
>
> Evan M. Tager
> Archis A. Parasharami
> MAYER BROWN LLP
> 1909 K. Street NW
> Washington, DC 20006

>           /s/ Ann L. Miller
> Ann L. Miller (P43578)
> THE MILLER LAW FIRM, P.C.
> Counsel for Plaintiffs
> 950 West University Drive, Suite 300
> Rochester, Michigan 48307
> (248) 841-2200
> alm@millerlawpc.com