IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT F. FRANCIS, II,                    )
                                          )
            Plaintiff,                    )
                                          )        Case No.: 2:07-cv-14921
vs.                                       )
                                          )        Hon. George Caram Steeh
AT&T INC. d/b/a AT&T                      )        Magistrate Judge Mona K. Majzoub
AT&T MOBILITY, LLC, f/k/a                 )
CINGULAR WIRELESS LLC,                    )        **ORAL ARGUMENT REQUESTED**
                                          )
            Defendants.                   )


## REPLY MEMORANDUM IN SUPPORT OF AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS ACTION


Michelle Thurber Czapski (P47267)
Toby A. White (P67530)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
Telephone: (313) 223-3636

Evan M. Tager (co-counsel)
Archis A. Parasharami (co-counsel)
MAYER BROWN LLP
1909 K Street NW
Washington, DC  20006
Telephone:  (202) 263-3000

Francis does not deny that he has agreed to resolve his disputes with ATTM in individual arbitration or small claims court. And while he now seeks to evade that agreement, the only ground he identifies is that the agreement requires that arbitration be conducted on an individual basis and does not permit class-wide arbitration. Although Francis argues that such a requirement categorically violates public policy, he is mistaken: ATTM's pro-consumer arbitration provision is fully enforceable under Michigan law. Moreover, if Michigan law were construed otherwise, it would be preempted by the Federal Arbitration Act.

## I.     FRANCIS'S AGREEMENT TO ARBITRATE IS ENFORCEABLE UNDER MICHIGAN LAW.

Under Michigan law, Francis bears the burden of proving that his agreement to arbitrate is unenforceable. *See*, *e.g.*, *Morris v. Metriyakool*, 344 N.W.2d 736, 742 (Mich. 1984) ("The burden of avoiding * * * arbitration agreements, as with other contracts, rests with those who would avoid them."). He has failed to meet that burden.

### A.     Francis's Arbitration Clause Is Not Unconscionable

Under Michigan law, a contract term is not unconscionable unless it is ***both*** procedurally and substantively unconscionable. *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 474 (Mich. Ct. App. 2005). Neither aspect of unconscionability exists here. Indeed, as one federal court recently noted, ATTM's arbitration provision creates a process that is "quick, easy to use, and prompts full or * * * even excess payment to the customer *without* the need to arbitrate or litigate." Order, *Laster v. T-Mobile USA, Inc.*, No. 05-cv-1167, at 16 (S.D. Cal. Aug. 11, 2008) ("*Laster* Order") (attached as **Exhibit A**), *appeal pending*, No. 08-56394 (9th Cir.); *see also* ATTM Br. in Support of Mot. to Compel Arb. ("ATTM Arb. Br.") at 3-5 (describing unique features of ATTM's provision).

First, with respect to procedural unconscionability, Michigan law—unlike cases from states such as California—rejects the notion that an arbitration provision is automatically procedurally unconscionable simply because it is part of a form contract. ATTM Arb. Br. 9 (citing *Pichey v. Ameritech Interactive Media Servs.*, 421 F. Supp. 2d 1038, 1046-49 (W.D. Mich. 2006)). Moreover, the standard under Michigan law is not, as Francis apparently contends, that a consumer must have access to the identical goods or services, but rather that he have "***no realistic alternative*** to acceptance of the term." *Clark*, 706 N.W.2d at 474 (emphasis added). Indeed, if Michigan law on procedural unconscionability were as Francis contends, courts would be forced to delve into the minutiae of every aspect in which service or products differ—a daunting task with respect to wireless service, in which there are a number of variables such as rate plans, calling areas, additional features such as text messaging, and so on.

In any event, Francis's assertion that he could not have obtained "comparable" wireless service from a different provider without agreeing to individual arbitration (Opp. 13-15) is simply untrue. Indeed, he does not dispute that Virgin Mobile provides wireless service without requiring individual arbitration. Instead, he contends that Virgin Mobile is not a "comparable alternative" to ATTM because, in his view, Virgin Mobile does not offer similar roaming capability. Opp. 14-15.[1] An arguable difference in the quality of service, however, does not equate to the complete absence of alternative options that is required for procedural unconscionability. Moreover, Francis ignores that "[u]nder Virgin Mobile's arrangement with

---

[1]    To support his assertion that Virgin Mobile does not offer roaming service at all, Francis quotes the following disclaimer from Virgin Mobile's web site: "we have great coverage, but if you wander out of it, your phone is not going to work." Opp. 14 (internal citation and quotation marks omitted). But that statement makes nothing more than the obvious and unremarkable point that no wireless service provider can guarantee continuous coverage.

Sprint, Virgin Mobile customers have access to service on the Sprint Nationwide PCS Network."

*See* Opp., Hutton Decl. Ex. E.  As Francis himself acknowledges, Sprint's network covers at

least 235 million people in the United States.  Opp. 13.  Accordingly, there can be no question

that Virgin Mobile provides a "realistic alternative" to ATTM service.[2]  When such an

alternative is present, courts in Michigan, including this Court, routinely hold that there is no

procedural unconscionability.  As this Court has explained, "[the] Plaintiff has not shown that

[the defendant] was his ***only*** source for buying a new motor home, or that other potential sources

required submitting disputes to arbitration."  *Pack v. Damon Corp.*, 320 F. Supp. 2d 545, 556

(E.D. Mich. 2004) (emphasis added), *rev'd in part on other grounds*, 434 F.3d 810 (6th Cir.

2006).[3]  Accordingly, ATTM's provision is not procedurally unconscionable under Michigan

law.  Francis's unconscionability challenge must fail for this reason alone.

    ATTM's arbitration provision also is not substantively unconscionable.  Under Michigan

law, contractual terms are not substantively unconscionable unless "the inequity of the term is ***so***

---

[2]    Francis claims that information about another wireless provider ATTM cited, PowerNet, is no longer available online.  *See* Opp. 17-18.  But even if PowerNet were not available as an alternative, this Court has explained that there is no procedural unconscionability so long as ***some*** comparable alternative—here, Virgin Mobile—is available.  *See Pack v. Damon Corp.*, 320 F. Supp. 2d 545, 556 (E.D. Mich. 2004) (Steeh, J.), *rev'd in part on other grounds*, 434 F.3d 810 (6th Cir. 2006); *see also* Francis Mot. for Declaration at 15 (acknowledging that the relevant question is "whether the relatively weaker party had ***an*** alternative source with which it could contract") (emphasis added).

[3]    *See also Copeland v. Katz*, 2005 WL 3163296, at \*2 (E.D. Mich. Nov. 28, 2005) ("Plaintiff has failed to demonstrate that he could not have obtained a vehicle from another seller who would not have required Plaintiff to sign an arbitration agreement."); *Pichey v. Ameritech Interactive Media Servs., Inc.*, 421 F. Supp. 2d 1038, 1049 (W.D. Mich. 2006) ("In sum, the evidence unequivocally shows that [the defendants] were not the sole providers for the range of services purchased by Plaintiffs.  In addition, the types of services available through [the defendants] did not offer the only realistic alternative for Plaintiffs * * *.  As a result, Plaintiffs fail to demonstrate the necessary procedural unconscionability.") (internal quotation marks omitted).

*extreme as to shock the conscience*." *Clark*, 706 N.W.2d at 475 (emphasis added). Not one of

Francis's three briefs acknowledges this generally applicable standard under Michigan law, most

likely because he has no hope of showing that ATTM's arbitration provision—one that is

exceptionally favorable to consumers—"shock[s] the conscience." Indeed, in his opposition to

ATTM's motion to compel arbitration, Francis does not bother to argue that the provision is

substantively unconscionable.[4] In short, Francis has not met his burden of proving substantive

unconscionability.

**B.      ATTM's Arbitration Clause Is Not Void Under Michigan's Public Policy**

Francis is equally mistaken in contending that enforcing ATTM's arbitration provision

would violate Michigan public policy. The Michigan Supreme Court has emphasized that public

policy must be clearly evident in a recognized source of law. *See Terrien v. Zwit*, 648 N.W.2d

602, 608 (Mich. 2002) ("The public policy of Michigan is *not* merely the equivalent of the

personal preferences of a majority of this Court; rather such a policy must ultimately be clearly

rooted in the law.") (emphasis in original). But contrary to Francis's position, no Michigan

statute confers an inalienable right to pursue class actions. What is clear, however, is that

"Michigan public policy favors arbitration to resolve disputes." *Rooyakker & Sitz, P.L.L.C. v.*

*Plante & Moran, P.L.L.C.*, 742 N.W.2d 409, 416 (Mich. Ct. App. 2007) (citing *Rembert v.*

*Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 212-13 (Mich. Ct. App. 1999)); *accord*

---

4       Francis does attempt to "incorporate[] by reference" (Opp. 3 n.2) his earlier motion for a
declaration (Docket No. 13) seeking to invalidate the class-arbitration waiver. In that brief, he
relies on two Michigan federal court decisions in asserting that his arbitration agreement is
substantively unconscionable. *See* Pl.'s Mot. for Decl. at 14-15 (citing *Lozada v. Dale Baker*
*Oldsmobile, Inc.*, 91 F. Supp. 2d 1087 (W.D. Mich. 2000); *Wong v. T-Mobile USA, Inc.*, 2006
WL 2042512 (E.D. Mich. July 20, 2006)). But as ATTM has explained, ATTM's arbitration
provision is more favorable to customers than the provisions at issue in *Lozada* and *Wong*. *See*
Def.'s Mot. to Strike and Resp. to Pl.'s Mot. For Decl. (Docket No. 22) at 12, 13.

*Omega Constr. Co. v. Altman*, 382 N.W.2d 839, 841 (Mich. Ct. App. 1985).

Francis chiefly relies on *Wong v. T-Mobile USA, Inc.*, 2006 WL 2042512 (E.D. Mich. July 20, 2006), in which Judge Edmunds refused to enforce an arbitration provision in T-Mobile's service agreements. *See* Pl.'s Reply in Support of Mot. for Decl. (Docket No. 37) at 2-3; Opp. 12-13. But to ATTM's knowledge, no other Michigan case reaches the public policy conclusion that *Wong* has—and Francis fails to confront any of ATTM's arguments about why *Wong* is both distinguishable and wrongly decided. Francis argues that, because the Michigan Consumer Protection Act (MCPA) provides for class actions, the statute confers an "unwaivable substantive right" to file class actions. Pl. Reply Mot. Decl. 3 (citing *Wong*). But *Wong* erred in its assumption that **state** public policy (as opposed to a policy announced by **Congress**) can defeat enforcement of an arbitration agreement under the FAA. As the Supreme Court has repeatedly underscored, "Section 2 [of the FAA] 'declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner. That national policy * * * 'foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements.'" *Preston v. Ferrer*, 128 S. Ct. 978, 979 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 16 (1984)).[5] And even the Ninth Circuit has held that, even when a state consumer-protection statute explicitly barred the waiver of class actions—as opposed to the MCPA, which simply makes that procedure available—that statute was preempted because it was not a rule of "general applicability." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (holding that

---

[5] "The FAA's displacement of conflicting state law is 'now well-established,' *Allied-Bruce Terminix Cos. v. Dobson*, 513 U. S. 265, 272 (1995) , and has been repeatedly reaffirmed, see, *e.g., Buckeye* [*Check Cashing, Inc. v. Cardegna*, 546 U. S. 440, 445-46 (2006)]; *Doctor's Associates, Inc. v. Casarotto*, 517 U. S. 681, 684–685 (1996); *Perry v. Thomas*, 482 U. S. 483, 489 (1987)." *Preston*, 128 S. Ct. at 983 (parallel citations omitted).

California Consumer Legal Remedies Act's anti-waiver provision, under which class waivers in consumer contracts would be deemed categorically unenforceable, was preempted by FAA). Moreover, as noted above (*see* note 4, *supra*), ATTM's provision is much more favorable to customers than the T-Mobile provision at issue in *Wong*. *See also* ATTM Arb. Br. 15.

In addition, many of the cases that Francis invokes—the vast majority from outside Michigan—considered arbitration provisions that lacked the consumer-friendly features of ATTM's current arbitration agreement. For example, Francis cites the Illinois Supreme Court's decision in *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250 (Ill. 2006) (*see* Opp. 3), but neglects to mention that it involved an arbitration provision that ATTM has not used since 2003. *See* 857 N.E.2d at 257-60. Indeed, *Kinkel* explained: "We do not hold that class action waivers are *per se* unconscionable. It is not unconscionable or even unethical for a business to attempt to limit its exposure to class arbitration or litigation, but to prefer to resolve the claims of customers or clients individually." *Id.* at 278. Applying Illinois law, a federal court has recently upheld an arbitration provision used by ATTM's predecessor, AT&T Wireless. *Crandall v. AT&T Mobility, LLC*, 2008 WL 2796752 (S.D. Ill. July 18, 2008). The arbitration provision in Francis's agreement is even more favorable to customers than the one upheld in *Crandall*.[6]

Francis also points to a decision by the Ninth Circuit holding that an earlier version of

---

[6]      None of the other cases that Francis cites (Opp. 6-7)—*Scott v. Cingular Wireless*, 161 P.3d 1000 (Wash. 2007) (en banc); *Bradberry v. T-Mobile USA, Inc.*, 2007 WL 1241936 (N.D. Cal. Apr. 27, 2007); *Fiser v. Dell Computer Corp.*, 188 P.3d 1215 (N.M. 2008); *Gentry v. Superior Court*, 165 P.3d 556 (Cal. 2007), *cert. denied sub nom. Circuit City Stores, Inc. v. Gentry*, 128 S. Ct. 1743 (2008); and *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265 (W. Va. 2002)—involved an arbitration clause that provided the unprecedented benefits and premiums of ATTM's clause. And Francis neglects to acknowledge that a West Virginia federal court held, in the course of enforcing an earlier arbitration clause used by AT&T Wireless, that *Berger* is preempted by the FAA. *See Schultz v. AT&T Wireless Servs., Inc.,* 376 F. Supp. 2d 685, 691 (N.D. W. Va. 2005).

ATTM's arbitration provision is unenforceable under *California* law. *See* Opp. 4-5 (citing

*Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976 (9th Cir. 2007)). That state's law is

inapplicable here, of course. In any event, the Ninth Circuit's concerns about the earlier

provision have been fully resolved by ATTM's current provision—the one at issue in this case.

According to the *Shroyer* court, the key concern under California law is that "when the potential

for individual *gain* is small, very few plaintiffs, if any, will pursue individual arbitration or

litigation." 498 F.3d at 986 (emphasis in original). Indeed, the prospect of large premiums

under ATTM's arbitration provision ensures that the claims of ATTM's customers (in

arbitration) are *never* "small." Quite the opposite: They are potentially substantial. Thus, one

federal court in California recently explained that ATTM's "arbitration provision provides

sufficient incentive for individual consumers with disputes involving small damages to pursue

(a) the informal claims process to redress their grievances, and (b) arbitration in the event of an

unresolved claim." *Laster* Order, Ex. A, at 17. As the *Laster* court observed, "the revised

arbitration provision sufficiently incentivizes consumers in disputes involving small dollar

amounts to pursue ATTM's informal claims process," and "if the informal claims process fails,

the * * * Premium is available to induce the consumer to pursue individual arbitration." *Id.* at

16. Hence, "under the revised arbitration provision, nearly all consumers who pursue the

informal claims process are very likely to be compensated promptly and in full." *Id.*

Francis's reliance on *Stiener v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016 (N.D. Cal.

2008), *appeal pending*, No. 08-15612 (9th Cir.), is likewise misguided for the reasons explained

in *Laster*. The *Stiener* court refused to enforce ATTM's current arbitration provision under

California law because, in its view, ATTM had "failed to establish [that] its Arbitration

Agreement is as efficient a dispute resolution system as class actions are" (556 F. Supp. 2d at 1033) and that "*all * * ** consumers would recover more, on average," in individual arbitration than they would receive if the class action were to proceed (*id.* at 1031 (emphasis in original)). But, as the *Laster* court explained, the *Stiener* court's analysis was flawed because it "did not address the effect of the Premium as an incentive for individuals to pursue the *informal claims process*." *Laster* Order, Ex. A, at 16 n.8 (emphasis in original). Indeed, "[plaintiffs] arguably would be better off to individually pursue their claim in arbitration (as their net recovery may be larger and more quickly paid through ATTM's informal claims and arbitration process)." *Id.* at 20 n.10.[7]

In addition, the *Stiener* court uncritically assumed—as does Francis—that the class action would be certified and culminate in make-whole relief for all absent class members. But roughly four-fifths of class actions are not certified. *See* Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does It Make?*, 81 NOTRE DAME L. REV. 591, 635 (2006). Those that are certified almost always result in settlements (*e.g.*, *id.* at 638), under which class members typically receive pennies on the dollar, with the vast majority not bothering to submit a claim. Thus, as the *Laster* court explained, "a reasonable consumer may well prefer quick informal resolution with likely full payment over class litigation that could take months, if not years, and which may merely yield an opportunity to submit a claim for recovery of a small percentage of a few dollars." *Laster* Order, Ex. A, at 17.[8]

---

[7]    *See also* Supp. Decl. of Neal Berinhout (attached as **Exhibit C**) ¶ 3 (explaining that ATTM generally includes attorneys' fees in settlement offers when customers request them); *Laster* Order, Ex. A at 15 n.7 (same).

[8]    This reasoning should have led the *Laster* court to uphold the arbitration provision,

Even if ATTM's premiums were not available, Francis cannot argue that *he* lacks sufficient incentives to pursue cost-free arbitration on an individual basis, because *his* claims are not small. Francis himself values his alleged compensatory damages at $1,143. Opp. 8 (citing Francis Decl.). That claim is more than four times the $250 in minimum statutory damages available for a violation of the MCPA (MICH. COMP. LAWS ANN. § 445.911(2)), an amount that the Michigan legislature evidently believed to be sufficient to motivate individual plaintiffs to sue for violations of that statute.[9] And the claim is nearly 58 times the "paltry" $19.74 in "actual damages" that were at issue in *Wong*, which held that, in light of those small damages, the plaintiff could not effectively vindicate his rights without a class action "under the facts of this case." 2006 WL 2042512, at *1, *5.[10] Thus, Francis's alleged damages are more than sufficient

---

because a dispute-resolution process that "a reasonable consumer may well prefer" cannot be shocking to the conscience. Instead, however, the *Laster* court held that the arbitration provision had to be invalidated solely because ATTM had failed to prove that (i) "a market for settlement exists"; (ii) "the market created by the arbitration provision is an adequate substitute for class arbitration *vis-à-vis* putative members of a class who are (absent notice) unaware of the violations alleged in the present litigation"; and (iii) "such a market would adequately deter ATTM's alleged wrongdoing." *Laster* Order, Ex. A, at 19. This holding is erroneous both as a matter of California and federal law. First, California law (like Michigan law (*see* page 1, *supra*)) squarely places the burden of proving unconscionability on the party seeking to avoid enforcement of the contract, not on the party defending the contract. Second, neither the California Supreme Court nor the Ninth Circuit has ever adopted the three-part test announced in *Laster*; it simply is not California law. Finally, even if it were, it would deviate so dramatically from generally applicable unconscionability principles as to be preempted by the FAA. In short, the *Laster* court was right that ATTM's arbitration provision provides adequate incentives to pursue small claims in individual arbitration, but it was wrong that the arbitration provision is nonetheless unenforceable.

[9]    *See Doe v. Chao*, 306 F.3d 170, 198 (4th Cir. 2002) (statutory damages serve "to ensure that citizens with little or no provable damages would have an incentive to sue"), *aff'd*, 540 U.S. 614 (2004); *Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927, 932 (3d Cir.) (statutory damages are "a civil penalty, the purpose of which is to provide an incentive for private litigants to institute actions"), *vacated per curiam on other grounds*, 459 U.S. 56 (1982).

[10]    *Wong* did not discuss the minimum statutory damages available under the MCPA.

to motivate him and his counsel to pursue his individual claim, even without taking into account the $5,000 premium and double attorneys' fees that he could receive under his contract. That is even more clear once Francis's claim for punitive damages (Compl. at 22) is factored into the analysis.

Francis insists that neither consumers nor counsel will bother to pursue small claims on an individual basis, citing declarations of two lawyers who assert that neither they nor any other competent Michigan lawyer would pursue claims under ATTM's arbitration provision. In a separate motion, ATTM will explain why these declarations should be stricken in whole or in part.[11] But in any event, Francis and his declarants are wrong as a factual matter: Michigan attorney Wolfgang Mueller has explained that, based on his review of ATTM's arbitration provision, "an individual plaintiff *could* obtain a Michigan attorney, such as myself, to represent him or her on an individual basis" in arbitration. Declaration of Wolfgang Mueller ¶ 6 (attached as **Exhibit B**) (emphasis added).

Moreover, Francis's argument depends on a mistaken understanding of the way that ATTM's arbitration provision functions. As the *Laster* court observed, because the availability of the premiums creates incentives for ATTM to make generous settlement offers, the plaintiffs in that case were compelled to acknowledge that "a consumer is virtually guaranteed a payment

---

[11]   ATTM has had no opportunity to investigate the declarations of attorneys Hanley and Romano through discovery. Accordingly, the Court should either grant ATTM's pending motion to compel discovery (Docket No. 38) and allow ATTM to file a supplemental brief incorporating what it learns in discovery, or it should strike those declarations and disregard any arguments based on them. In any event, they are virtually without probative value, as they establish only that these two Michigan lawyers whose declarations contain almost identically worded statements will not represent customers in arbitration. Their assertions regarding other lawyers are based on sheer speculation (which, as discussed in text, is belied by the testimony of Wolfgang Mueller, a Michigan plaintiffs' attorney).

by ATTM of up to twenty times ($100 for a $5 claim) his or her actual damages simply by filling

out a one-page form to initiate the informal claims process." *Laster* Order, Ex. A, at 15-16

(internal quotation marks and brackets omitted). Accordingly, a "customer will have been made

whole, or at least satisfied, and with minimal effort * * *. The process is quick, easy to use, and

prompts full or, as described by Plaintiffs, even excess payment to the customer *without* the need

to arbitrate or litigate." *Id.* at 16 (emphasis in original); *see also* Mueller Decl., Ex. B, ¶ 7

(ATTM's arbitration agreement "give[s] AT&T every financial incentive to make a sincere effort

to resolve disputes" during the 30-day period after the company receives notice of a customer's

dispute).[12] Such a simple, effective process cannot violate Michigan public policy, which, after

all, *favors* the enforcement of arbitration agreements. *See* pages 4-5, *supra*.

As for Francis's contention (Opp. 18-19) that requiring plaintiffs to pursue arbitration

individually will result in injustice due to the unavailability of class-wide injunctive relief, the

nature of Francis's own claim belies that assertion. The gravamen of Francis's claim is that

ATTM falsely advertised that it provided its customers with services that it was not, in fact,

capable of providing. If an arbitrator determines that ATTM did in fact engage in such deceptive

marketing, an injunction against repeating the behavior with respect to Francis will entirely

preclude ATTM from engaging in any such practice, as it cannot very well target its advertising

---

[12]    Francis decries the fact (Opp. 11-12) that ATTM has posted a "layperson's guide" to using ATTM's dispute-resolution process, asserting that it means that ATTM "likely anticipated that many consumers would arbitrate" without attorneys. That argument underscores that Francis's real concern (or likely, that of his counsel) is that the simplicity of arbitration may obviate the need for an attorney. Such concerns, however, ignore that a key benefit of arbitration is to make dispute resolution a more realistic and accessible possibility for consumers.

(or its coverage area) toward or away from Francis alone.[13]

## II.    ANY INTERPRETATION OF MICHIGAN LAW THAT WOULD INVALIDATE ATTM'S ARBITRATION CLAUSE IS PREEMPTED BY THE FAA.

Francis also misunderstands ATTM's preemption arguments.  ATTM agrees that Section 2 of the FAA generally permits courts to invalidate arbitration agreements on the basis of defenses that are applicable to all contracts and that, broadly speaking, unconscionability is such a permissible contract defense.  But Francis fails to recognize that Section 2 forbids courts from circumventing the FAA's bar on state laws that single out arbitration agreements by distorting "general principle[s] of contract law, such as unconscionability," in order to "employ [them] in ways that subject arbitration clauses to special scrutiny."  *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004).

As noted above, contractual terms are not substantively unconscionable under Michigan law unless they impose an inequity "so extreme as to shock the conscience."  *See* pages 3-4, *supra*.  That generally applicable standard cannot be met here:  It is neither irrational nor conscience-shocking for a customer to accept ATTM's arbitration provision in order to obtain superior individual dispute resolution and lower-priced wireless service.  Indeed, as the *Laster*

---

[13]    Finally, Francis argues (Opp. 19) that requiring him to arbitrate his claims on an individual basis will deprive unsuspecting potential class members of notice that they might have claims against ATTM.  But as noted above (at 8-9), about 80 percent of putative class actions are not certified, and therefore class notice would be unavailable for the vast majority of cases.  Even when class notice is available, it is generally ineffective, as demonstrated by the fact that very few class members actually recover any benefits from class actions.  *See* pages 8-9, *supra*.  More fundamentally, the objection to a lack of class notice is nothing more than an objection to the waiver of the class-action procedure.  As discussed above (at 4-6), Michigan public policy does not forbid class-action waivers, and if it did, it would be preempted by the FAA.  Last, as a practical matter, there is nothing that prevents Francis or anyone else, including his attorneys, from informing other ATTM customers of Francis's allegations, because ATTM's arbitration provision contains no confidentiality requirement.

court concluded, "a reasonable consumer may well prefer" ATTM's provision to class actions. *Laster* Order, Ex. A, at 17. Simply put, ATTM's provision cannot be deemed conscience-shocking under any reasonable understanding of the term. To hold otherwise would deviate from the general rule and would thus be expressly preempted by the FAA. *See* ATTM Arb. Br. 16-19.

Any effort to invoke a supposed Michigan public policy against the waiver of class actions also fails. Francis argues (Opp. 4-5) that, because the Ninth Circuit has rejected the argument that a state-law rule conditioning enforcement of arbitration provisions on the availability of class-wide arbitration conflicts with the FAA, this Court must do so as well. He is mistaken in multiple respects. To begin with, he ignores the Third Circuit's decision in *Gay v. CreditInform*, 511 F.3d 369 (2007), which holds, contrary to *Shroyer*, that a state-law rule that would refuse to enforce an arbitration agreement because it contains a class waiver is preempted by the FAA. His failure to address *Gay* is inexplicable, given that ATTM extensively discussed the decision in its opening brief in support of its motion to compel arbitration. *See* ATTM Arb. Br. 19, 22.

Furthermore, Francis fails to mention the Supreme Court's recent decision in *Preston*, which undercuts the reasoning in *Shroyer* and other cases. Francis points to cases like *Shroyer*, which have held that there is no FAA preemption when a state-law rule refuses to enforce class-arbitration waivers and class-litigation waivers alike. *See* Opp. 4-7. But *Preston* supersedes these courts' reasoning on this point—reasoning that would exclude from preemption, for example, state requirements that all arbitration conform to the full rules of civil procedure.

*Preston* makes clear that, even if a state-law rule on its face applies equally to arbitration and litigation, that rule is preempted if it conflicts with a "prime objective" of the FAA.

In *Preston*, the Supreme Court held that the FAA preempted a California law "grant[ing] the Labor Commissioner exclusive jurisdiction to decide an issue that the parties agreed to arbitrate," in that case whether a person is a "talent agent." 128 S. Ct. at 980, 984–85. In an effort to salvage the California statute, the respondent contended that the law nonetheless was "compatible with the FAA because" it was an exhaustion requirement—*i.e.*, it "merely postpones arbitration until after the Labor Commissioner has exercised her primary jurisdiction." *Id.* at 985. Because the statute allows a *de novo* appeal of the Commissioner's decision to California superior court, the respondent argued that "[r]equiring initial reference of the parties' dispute to the Labor Commissioner" (*id.* at 986) would apply equally to litigation **and** arbitration, and that such equal treatment was not preempted. The Supreme Court disagreed, explaining that "[a] prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" *Id.* "That objective would be frustrated" by the California law because even "[r]equiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." *Id.*

Similar reasoning applies here. There can be no doubt that engrafting class proceedings onto arbitration would "hinder speedy resolution of the controversy" (*id.*) between Francis and ATTM. *See* ATTM Arb. Br. 19-22. Moreover, as explained in ATTM's opening brief (at 20-22), mandatory class arbitration would result in the abandonment of arbitration altogether, which

would frustrate Congress's purpose of encouraging the use of arbitration.[14]   Thus, the FAA

preempts the rule that Francis advances here.

## CONCLUSION

The Court should compel Francis to arbitrate his claims in accordance with his arbitration

agreement and should dismiss this action.

Dated:  September 2, 2008                            Respectfully submitted,

    /s/ Toby A. White_____
      Michelle Thurber Czapski (P47267)
      Toby A. White (P67530)
    DICKINSON WRIGHT PLLC
    Attorneys for Defendant ATTM
    500 Woodward Ave., Suite 4000
    Detroit, MI 48226-3425
    (313) 223-3425
    mczapski@dickinsonwright.com
    twhite@dickinsonwright.com

    Evan M. Tager
    Archis A. Parasharami
    MAYER BROWN LLP
    Co-counsel for Defendant ATTM
    1909 K Street NW
    Washington, D.C. 20006
    (202) 263-3000
    aparasharami@mayerbrown.com

---

[14]     Francis asserts that the fact that the American Arbitration Association created a roster of arbitrators who could handle putative class arbitrations "in response to" the Supreme Court's decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), means that class arbitrations are commonplace.  Opp. 16-17 n.4.  A far more likely explanation is that, prior to *Bazzle*, few parties or courts even contemplated the possibility of class arbitration.  In any event, the empirical evidence shows that the (always minuscule) number of class arbitrations filed annually since *Bazzle* is declining, indicating that, post-*Bazzle*, businesses are learning to draft their arbitration clauses to avoid the waste and uncertainty that are part and parcel of class arbitration.  *See* Christopher R. Drahozal, *Arbitration Costs and Forum Accessibility: Empirical Evidence*, 41 U. MICH. J. L. REFORM 813, 836 (2008) ("the trend in filings of class arbitrations with the AAA" is that "[c]laimants filed roughly fifty cases a year from 2004 to 2006, and then filings declined somewhat to thirty-six in 2007").

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served upon all counsel of record by CM/ECF on September 2, 2008.

/s/  Toby A. White_____
  Toby A. White (P67530)
Dickinson Wright PLLC
Attorneys for Defendant ATTM
500 Woodward Ave., Suite 4000
Detroit, Michigan 48226-3425
(313) 223-3500
twhite@dickinsonwright.com