UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT F. FRANCIS, II,

        Plaintiff,

                                     Case No. 07-CV-14921

vs.                                 HON. GEORGE CARAM STEEH

AT&T MOBILITY LLC f/k/a
CINGULAR WIRELESS LLC,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (#17) AND DENYING PLAINTIFF'S MOTION TO DECLARE CLASS ACTION WAIVER UNLAWFUL (#13)

Defendant AT&T Mobility, L.L.C. ("AT&T") moves to compel arbitration of plaintiff Robert Francis II's claims on an individual basis. Plaintiff Francis moves for a declaration that a contractual waiver of the right to file or participate in class action arbitration is unenforceable under Michigan law. A hearing on the motions was held on February 11, 2009. For the reasons set forth below, AT&T's motion to compel arbitration on an individual basis will be GRANTED. Francis' motion to declare class action waiver unlawful will be DENIED.

## I. Complaint

Francis, a resident of Michigan, filed a First Amended Class Action Complaint on January 2, 2008 against defendants AT&T, Inc.,[1] since dismissed, and AT&T Mobility, L.L.C. ("AT&T"). AT&T is a Delaware corporation with its principal place of business in Atlanta, Georgia. Subject matter jurisdiction is premised on diversity of citizenship and

_____

[1] AT&T, Inc. was dismissed by stipulation on February 7, 2008 pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).

alleged aggregate class action damages exceeding $5.0 million.  See 28 U.S.C. § 1332

(d)(2), (6).

AT&T, Inc. acquired Cingular Wireless on December 29, 2006.  Francis alleges he

and his wife have been AT&T customers since February 18, 2006, subscribing to AT&T's

"Family Talk Nation Plan" ("Plan"), which provides wireless calling to subscribers in

exchange for a monthly fee.  The Plan's "Domestic Coverage Area" ("DCA") includes most

of the continental United States, Puerto Rico, and Hawaii, and parts of Alaska.  Francis

alleges on behalf of himself and the putative class of approximately 1 million Plan

subscribers that:

> 1.  AT&T represented in advertising and Plan contracts that calls made from within the DCA were "free" and "unlimited," and were not charged against "Anytime Minutes," yet AT&T charged for such calls, and lacked the technical ability to determine whether a call was made from within the DCA.

> 2.  AT&T represented in advertising and Plan contracts that there were no "roaming" charges if calls or text messages were made or received within the "International Roam Free Coverage Area" ("IRFCA"), being the 50 United States and Canada, yet AT&T charged for such calls and text messages, and lacked the technical ability to determine whether a call or text was made or received within the IRFCA.

> 3.  AT&T represented in advertising and Plan contracts that subscribers would receive free domestic "roaming" service, yet AT&T charged for domestic "roaming" service.

Based on these factual allegations, Francis alleges on behalf of himself and the putative

class breach of contract (Count I), violation of the Michigan Consumer Protection Act,

M.C.L. §§ 445.901 et seq., and other States' Consumer Protection Acts (Count II), and

innocent misrepresentation (Count III).

## II. Arbitration Agreement

Using a phone, Francis electronically signed two "Wireless Service Agreements"

("WSA") on February 18, 2006.  The WSAs incorporated by reference AT&T's "current

service Terms and Conditions Booklet . . . including its binding arbitration clause."  Francis

received written copies of the WSAs and "Terms and Conditions Booklet." AT&T revised

the arbitration clause in December 2006, and provided Francis with a written copy of the

revision in his December 2006 billing statement. AT&T also included legends in its

December 2006 through March 2007 billing statements reminding customers of a change

in the arbitration clause, and directing them to a website for further information. The

December 2006 arbitration provision, titled "DISPUTE RESOLUTION BY BINDING

ARBITRATION," reads in pertinent part:

> **Summary:**
> Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our Customer Service Department at 1-800-331-0500. **In the unlikely event that Cingular's Customer Service Department is unable to resolve a complaint you may have to your satisfaction (or if Cingular has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.** Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** Cingular will pay all costs of arbitration, no matter who wins, so long as your claim is not frivolous. Moreover, in arbitration you are entitled to recover attorneys' fees from Cingular to at least the same extent as you would be in court. In addition, under certain circumstances (as explained below), Cingular will pay you and your attorney a special premium if the arbitrator awards you an amount that is greater than what Cingular has offered you to settle the dispute.
>
> **Arbitration Agreement:**
> (1) Cingular and you agree to arbitrate all disputes and claims between us.
> . . . .
>
> *      *      *
>
> Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this Agreement, you and Cingular are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive

termination of this Agreement.

(emphasis in original). The arbitration provision also provides that "arbitration hearings will take place in the county (or parish) of your billing address."

### III.  Dispute Resolution Process
### Leading to Arbitration

According to AT&T's alternative dispute resolution process, if an AT&T subscriber's initial complaint cannot be resolved by a Customer Service Representative, the customer may initiate the process by submitting a written "Notice of Dispute," providing a brief description of the nature of the dispute and the desired relief.  An AT&T Customer Service Representative must respond to the Notice within 30 days.  If the customer is unsatisfied with the response, or if AT&T fails to respond within 30 days, the customer is authorized to submit a written "Demand for Arbitration" with the American Arbitration Association ("AAA").  If the arbitrator issues an award in favor of the customer which is greater than AT&T's last written settlement offer, the customer is entitled to a "special premium" consisting of the greater of $5,000.00 or the jurisdictional maximum award of the customer's local small claims court, twice the amount of attorney's fees, and reimbursement of attorney's expenses.  AT&T also agrees not to seek attorney's fees and expenses.

### IV.  Shared Issues

AT&T's motion to compel arbitration, and Francis' motion to declare class action waiver unlawful, share the same issues: (1) whether the class action waiver in the AT&T contract is unenforceable under state law; and (2) whether the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, preempts any finding under state law that the class action waiver in the AT&T contract is unenforceable.  This court recently issued Adler v. Dell, Inc., No. 08-13170, 2008 WL 5351042 (E.D. Mich. Dec. 18, 2008), granting defendant Dell's motion to

compel arbitration under a dispute resolution clause.  The court held that the arbitration agreement in <u>Adler</u>, waiving class action relief, was enforceable under Michigan law on the facts of the case.  <u>Id</u>. at *6.  Francis and AT&T focused on the court's analysis in <u>Adler</u> at the February 11, 2009 hearing.

Sitting in diversity, this court is required to decide an issue of state law as would the highest court of the state.  <u>Combs v. International Ins. Co.</u>, 354 F.3d 568, 577 (6th Cir. 2004).  The parties do not dispute that Michigan law is controlling.  Absent Michigan Supreme Court precedent, this court must predict how the Michigan Supreme Court would rule if faced with the issue.  <u>Meridian Mutual Ins. Co. v. Kellman</u>, 197 F.3d 1178, 1181 (6th Cir. 1999).  In Michigan, a party opposing arbitration bears the burden of establishing that a dispute is nonarbitrable.  <u>Id</u>. at *3 (citing <u>Rex v. CSA-Credit Solutions of Am., Inc.</u>, 507 F.Supp.2d 788, 793 (W.D. Mich. 2007)).

A. Waiver of Substantive Statutory Rights

Under Michigan law, arbitration agreements are unenforceable if: (1) they waive substantive statutory rights; and (2) the arbitration process is unfair to the extent that the litigant cannot effectively enforce his statutory rights.  <u>Adler</u>, 2008 WL 5351042, at *7 (citing <u>Rembert v. Ryan's Family Steak Houses, Inc.</u>, 235 Mich. App. 118, 156, 596 N.W.2d 208 (1999)).  Under the Michigan Consumer Protection Act ("MCPA"), a person who suffers loss as the result of an unfair trade practice as defined in M.C.L. § 445.903 may bring an action to recover the greater of actual damages or $250.00, together with attorneys' fees.  M.C.L. § 445.903(2).  A person who suffers a loss as a result of a violation of the MCPA may also bring a class action on behalf of other injured persons residing or injured in Michigan.  M.C.L. § 445.903(3).  Michigan's attorney general is likewise authorized by the MCPA to bring a class action on behalf of persons residing or injured in Michigan for the actual damages caused by a violation of the MCPA.  M.C.L. § 445.910(1).  On motion of

the attorney general, a court may grant appropriate relief, including ordering that the defendant reimburse those persons who suffered damages, or "to carry out a transaction in accordance with the aggrieved persons' reasonable expectations[.]"   M.C.L. § 445.910(2).

The right to bring a *federal* class action has been held to be a "procedural right only, ancillary to the litigation of substantive claims." Adler, 2008 WL 5351042, at *7 (quoting Deposit Guarantee Nat'l Bank v. Roper, 445 U.S. 326, 322 (1980)).  In Paley v. Coca-Cola Co., 389 Mich. 583, 209 N.W.2d 232 (1973), the Michigan Supreme Court held that the Michigan legislature did not divest Michigan circuit courts of jurisdiction over class action lawsuits in setting up district courts. Id. at 587.  The Paley court held that class actions were "historically equitable in nature" for purposes of M.C.L. § 600.8315, a statute which expressly excluded class actions from a district court's jurisdiction. Id. at 589, 591.  With that ruling, the minimum jurisdictional amount in controversy was obviated, and the issue of aggregation of damages was rendered moot. Id. at 595.  As a "Post-Script," the Paley court commented that the class action "has been particularly helpful for one of today's most beleagured and disaffected groups the consumer.  It is a kind of better slingshot for the modern David to tackle Goliath with." Id.  In Dix v. American Bankers Life Assurance Co. of Florida, 429 Mich. 410, 418, 415 N.W.2d 206 (1987), the Michigan Supreme Court reversed a lower court's ruling that a MCPA class action would not promote the "convenient administration of justice" because each class member, as with common law tort claims, would be required to prove justifiable reliance, and "the circuit court would essentially be required to try each plaintiff's case." See Dix v. American Bankers Life Assurance Co. of Florida, 141 Mich. App. 650, 659, 661, 367 N.W.2d 896 (1985), rev'd, 429 Mich. 410 (1987).  The Michigan Supreme Court rejected this reasoning, holding "that members of a class proceeding under the [MCPA] need not individually prove reliance on the alleged

misrepresentations" and that, consistent with Paley, "class actions may be maintained in the circuit court . . . without regard to the amount in controversy, provided the other requirements for maintenance of a class action are justified." Dix, 429 Mich. at 418, 420.

Neither Paley nor Dix support Francis' argument that a person's right to bring a class action under M.C.L. § 445.903(3) of the MCPA is a substantive statutory right under Michigan law. The Court of Appeals reasoning in Dix, that a person's right to bring an individual MCPA action in district court provided an adequate alternative remedy to a class action lawsuit, Dix, 141 Mich. App. at 662, was not even addressed by the Michigan Supreme Court when reversing the lower court and holding that MCPA class action members were not required to prove individual reliance, rendering an MCPA class action "convenient to the administration of justice." Dix, 429 Mich. at 418. The Paley court's post-script reference to class actions as a "better slingshot" for consumers than an individual lawsuit suggests, if anything, that a class action is a better *procedural* tool for enforcing substantive MCPA unfair trade practices claims than an individual lawsuit. Absent persuasive Michigan authority indicating that a person's statutory right to file an MCPA class action lawsuit is a substantive right, the court remains persuaded that a class action lawsuit becomes more akin to a substantive right than a procedural right only when the amount in dispute is so small that it becomes impracticable to bring an individual claim in the first instance. See Adler, 2008 WL 5351042, at *7 (citing Wong v. T-Mobile USA, Inc., No. 05-73922, 2006 WL 2042512, at *5 (E.D. Mich. July 20, 1996)).

As of September 19, 2007, Francis disputes paying $1,143.00 for calls that he alleges should have been free because they were made within his Plan's DCA and IRFCA. Under the MCPA, Francis is entitled to recover actual damages of $1,143.00 together with reasonable attorney's fees if he prevails against AT&T on an individual basis. M.C.L. § 445.903(2). "[T]he underlying purpose behind the MCPA's award of attorney fees is to

afford an indigent client the opportunity to seek protection and obtain a judgment where otherwise precluded because of monetary constraints." Smolen v. Dahlmann Apartments, Ltd., 186 Mich. App. 292, 297-298, 463 N.W.2d 261 (1990) (holding that "the MPCA's award of reasonable attorney fees applies to appellate proceedings").  Given the remedial nature of the MPCA, limiting the recovery of reasonable attorney's fees based solely on "the result obtained and the low value of the case" constitutes an abuse of judicial discretion.  Jordan v. Transnational Motors, Inc., 212 Mich. App. 94, 98, 537 N.W.2d 471 (1995).  Francis' proffered opinions of two Michigan attorneys, opining that they and other Michigan lawyers would be unwilling to represent an individual MCPA claimant such as Francis "on a contingent fee basis," overlooks the MCPA's award of *reasonable* attorney's fees for the very purpose of obtaining relief for individual consumers which would otherwise be preluded by the monetary constraint of an attorney recovering only a contingent fee on a low value award.  See Romano Declaration, ¶¶ 10-11, 27; Hanley Declaration, ¶¶ 13-15. Francis' potential recovery under M.C.L. § 445.903(2) of $1,143.00 plus *reasonable* attorney fees is not so small as to make it impracticable for Francis to pursue his claim on an individual basis.  Adler, 2008 WL 5351042, at *7, *9; Smolen, 186 Mich. App. at 297-298; Jordan, 212 Mich. App. at 98.  Under the facts of this case, Francis' right to pursue a class action under M.C.L. § 445.903(2) is not a substantive right as envisioned under Rembert.  See Adler, 2008 WL 5351042, at *7.

Assuming *arguendo* that Francis' right to bring an MCPA class action is a substantive right under Michigan law, the parties' agreement to waive class action lawsuits and arbitrate Francis' claim would only be unenforceable under Rembert if AT&T's dispute resolution process failed to effectively enforce Francis' right under M.C.L. § 445.903(2) to recover $1,143.00 and reasonable attorney's fees.  Adler, 2008 WL 5351042, at *7 (citing Rembert, 235 Mich. App. at 156).  Under AT&T's dispute resolution process, if AT&T's last

written settlement offer to Francis is less than $1,143.00, and Francis prevails on his claim in arbitration, Francis will be entitled to recover $5,000.00 as opposed to $1,143.00, twice the amount of his reasonable attorney fees, and reimbursement of his attorney's expenses. Even if Francis recovered less than AT&T's last written settlement agreement in arbitration, Francis would be contractually entitled "to recover attorney's fees from [AT&T] to at least the extent" he would be entitled to recover reasonable attorney's fees under the MCPA. M.C.L. § 445.903(2); Smolen, 186 Mich. App. at 297-298; Jordan, 212 Mich. App. at 98. AT&T's arbitration process is fair to the extent that Francis can effectively enforce his individual MCPA rights in AAA arbitration. Adler, 2008 WL 5351042, at *7 (citing Rembert, 235 Mich. App. at 156). Francis does not argue that the AAA's arbitration process is inherently unfair.

Francis' argument that a person cannot waive a statutory right as a matter of Michigan public policy is unpersuasive. Rembert expressly provides that even substantive statutory rights may be waived if the waiver does not effectively foreclose enforcement of that statutory right. Rembert, 235 Mich. App. at 156. Michigan courts have consistently permitted the contractual modification of statutory rights in the absence of an express statutory prohibition against such modification. See Dean v. Haman, No. 259120, 2006 WL 1330325, at-*2-3 (Mich. Ct. App. May 16, 2006) (citing Rory v. Continental Ins. Co., 473 Mich. 457, 471-472, 703 N.W.2d 23 (2005) (permitting modification of statute of limitations)); Detloff v. Hammond, Standish & Co., 195 Mich. 117, 161 N.W. 949 (1917) (voiding as against public policy an employee's agreement to settle a workers' compensation claim with his employer contingent upon the employee's success against a third-party tortfeasor because the workers' compensation statute expressly contemplated that such agreements were to be reached without contingency); Michelson v. Voison, 254 Mich. App. 691, 697, 658 N.W.2d 188 (2003) (abrogating as a matter of public policy  a

securities contract and its arbitration clause because the sellers were expressly prohibited by statute from selling securities without a license).  The MPCA does not expressly prohibit a consumer from waiving his right to file or participate in a class action lawsuit.  Francis' public policy arguments are not well taken.

If faced with the issue, the Michigan Supreme Court would conclude that the parties' arbitration agreement is not rendered unenforceable under <u>Rembert</u>, or by a Michigan public policy prohibiting the waiver of a class action lawsuit.  <u>Meridian Mutual</u>, 197 F.3d at 1181.

### B. Unconscionability

Under Michigan common law, contracts are also unenforceable if they are unconscionable.  <u>Ferguson v. Perry Coal Co.</u>, 213 Mich. 197, 199, 181 N.W. 980 (1921).  Whether a contract is unconscionable is a question of law for the court to decide.  <u>Id</u>.  A party seeking to invalidate an arbitration based on unconscionability must demonstrate both procedural and substantive unconscionability.  <u>Adler</u>, 2008 WL 5351042, at *9 (citing <u>Andersons, Inc. v. Horton Farms, Inc.</u>, 166 F.3d 308, 322 (6th Cir. 1998) (citing <u>Rehmann v. Robson & Co. v. McMahan</u>, 187 Mich. App. 36, 466 N.W.2d 325, 329 (1991))).  Procedural unconscionability requires proof that the plaintiff had no reasonable choice but to enter the contract.  <u>Adler</u>, 2008 WL 5351042, at *9 (citing <u>Hubscher & Son, Inc. v. Storey</u>, 228 Mich. App. 478, 481, 578 N.W.2d 701 (1998); <u>Ozormoor v. T-Mobile USA, Inc.</u>, No. 08-11717, 2008 WL 2528549, *4 (E.D. Mich. June 29, 2008)).  Substantive unconscionability requires proof that "the inequity of the term is so extreme as to shock the conscious."  <u>Adler</u>, 2008 WL 5351042, at *10 (citing <u>Clark v. DaimlerChrysler Corp.</u>, 268 Mich. App. 138, 144, 706 N.W.2d 471 (2005)).

### i. Procedural Unconscionability

On behalf of Francis, Attorney Paulette Terry attests and provides documentary

evidence that each of the top-ten cell phone providers available to Francis provides arbitration clauses and class action waivers in their service contracts. Plaintiff's Ex. H to August 21, 2008 Response Brief. AT&T responds with the declaration of Attorney Sarah Sulkowski, attesting that wireless phone service providers "Power Net Mobile" and "Virgin Mobile" were available to Francis when he contracted with AT&T, that Virgin Mobile uses top-ten wireless provider Sprint's network to deliver phone service, and that neither Power Net Mobile nor Virgin Mobile include arbitration clauses or class action waivers in their service contracts. Defendant's Exhibit B to January 25, 2008 Motion to Compel Arbitration. A comparison of cell phone coverage maps proffered by the parties demonstrates that AT&T's coverage area is considerably broader than the coverage areas provided by Power Net Mobile and Virgin Mobil, notwithstanding Virgin Mobile's use of Sprint's wireless network. See id., and Plaintiff's Exhibit A attached to First Amended Complaint. AT&T has also failed to dispute Francis' evidence that Virgin Mobile is a "pay as you go" service, not a monthly service as provided by AT&T. Francis has demonstrated that he had no realistic choice in acquiring comparable cell phone services from a wireless phone provider other than AT&T which did not require execution of a contract containing an arbitration clause and class action waiver. The AT&T class action waiver is procedurally unconscionable. Adler, 2008 WL 5351042, at *9; Pichey v. Ameritech Interactive Media Services, Inc., 421 F.Supp.2d 1038, 1045-1046 (W.D. Mich. 2006).

ii. Substantive Unconscionability

Consistent with the analysis in Section IV, A, supra, Francis' potential recovery under AT&T's dispute resolution process of $1,143.00 in damages plus reasonable attorney's fees, or $5,000.00 plus double attorney's fees if an arbitrator awards Francis more than AT&T's last written settlement offer, provides a significant incentive for Francis to pursue his $1,143.00 MCPA claim in individual arbitration. Francis argues that individual

11

arbitration remains substantively unconscionable because AT&T has unilateral control over its last written offer, making the recovery of any "premium" illusory. Francis continues that the "seven figure" cost of discovery related to AT&T's alleged technical inability to even discern whether a wireless call was made or received within its DCA or IRFCA, part of the unfair trade practices claim, clearly makes Francis' $1,143.00 claim economically infeasible. Francis maintains that the need for sophisticated discovery aligns this case with the more complex antitrust action of <u>Kristian v. Comcast Corp.</u>, 446 F.3d 25 (1st Cir. 2006), recognized in <u>Wong</u>, 2006 WL 2042512 at *4-*5 (finding an MCPA class action waiver to be unconscionable), than the straight-forward Truth In Lending Act ("TILA") cases relied on by this court in <u>Adler</u> in upholding a MCPA class action waiver provision. <u>See</u> <u>Adler</u>, 2008 WL 5351042, at *10-*11 (distinguishing <u>Kristian</u> from <u>Johnson v. West Suburban Bank</u>, 225 F.3d 366, 374 (3rd. Cir. 2000); <u>Snowden v. CheckPoint Check Cashing</u>, 290 F.3d 631, 638 (4th Cir. 2002); <u>Livingston v. Assocs. Fin., Inc.</u>, 339 F.3d 553, 559 (7th Cir. 2003); and <u>Randolph v. Green Tree Fin. Corp.</u>, 244 F.3d 814, 819 (11th Cir. 2001)). Francis further argues that it its substantively unconscionable for AT&T to have effectively erased Michigan class action lawsuits against AT&T at the small price of paying a few consumers a "premium" in arbitration while keeping the remaining majority of Michigan consumers in the dark.

In <u>Kristian</u>, Boston area cable service subscribers filed class action lawsuits alleging that the Comcast Corporation violated the Massachusetts Antitrust Act and federal Clayton Antitrust Act by charging inflated prices using "swapping agreements," which permitted competing companies to "trade territory, eliminating competition in a given geographical area." <u>Kristian</u>, 446 F.3d at 30, 30 n.1. The <u>Kristian</u> court initially recognized that "the existence of large arbitrational costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." <u>Id</u>. at 55 (quoting <u>Green Tree Financial</u>

Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000)).  Choosing the Third Circuit's Johnson

opinion as representative of the four Circuit Court decisions upholding class action waivers

in TILA cases, the Kristian panel reasoned that the rulings were premised on three

assertions: (1) class actions do not necessarily give plaintiffs better incentives to bring

private enforcement actions because individual recoveries in a class action lawsuit may be

lower than those obtainable in individual lawsuits, given TILA's statutory cap on class

recoveries; (2) TILA plaintiffs would be able to find legal representation without the class

action mechanism because of the availability of attorney's fees and costs; and (3) even if

TILA plaintiffs are discouraged from filing private class action lawsuits, administrative

enforcement still exists to fill the void.  Id. at 57.  The Kristian court determined that "these

rationales drawn from the TILA context do not support the validity of a bar to class

arbitration of Plaintiffs' antitrust claims."  Id.

Specifically, the panel in Kristian reasoned that "a typical TILA claim is vastly

different from prosecuting an antitrust claim because of the sheer complexity of the latter."

Id.  Whereas a TILA transaction hinges upon specific transactions, the type and terms of

credit, the resulting requisite disclosure, and the interest rate and finance charges, antitrust

actions usually involve complicated questions of both fact and law, as explained by three

expert witnesses:

> Plaintiffs will have to undertake an elaborate factual inquiry that includes:
>
> defining the relevant product market, defining the relevant geographic
> market, establishing the market power of defendants and the manner in
> which they exercised such power; the effects of potential competition within
> the relevant markets; the impact of conduct on any non-incumbent cable
> providers in the relevant market; analyzing the "swapping" agreements
> alleged in the Complaint, as well as merger and purchase of asset
> transactions that defendants may have been involved in relating to the
> alleged monopolization conduct; reviewing and analyzing the increases in
> cable subscription rates over time; establishing Comcast's alleged monopoly
> overcharges in relevant markets; and further calculating the named plaintiffs'
> damages.

Id. at 58.   One expert in Kristian opined that expert witness fees would range from $300,000.00 to $600,000.00, while another expert offered that reasonable attorneys' fees and costs would exceed several million dollars, and that individual recoveries would range from a few hundred to a few thousand dollars.  Id.  Another expert attested that, due to the complexity of the antitrust case, an individual antitrust action "would be extremely compromised, and effectively precluded, without the testimony of expert witnesses."  Id. From this evidence, the Kristian court found that the availability of attorney fees and costs would not provide the necessary incentive for pursuing private antitrust enforcement actions because, as stated by one expert, "[i]t should not surprise anyone that a qualified attorney would not pursue a few individual cases on a contingent basis where even a victory would result in the loss of millions of dollars of time and expense."  Id. at 58-59.  Without any monetary incentive for consumers to file individual private antitrust claims, the  possibility of administrative enforcement actions was found in Kristian to be "even more suspect" because weakening the private enforcement action was inconsistent with the statutory scheme "envision[ing] a role for both types of enforcement."  Id. at 59.

"[W]here 'a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'"  Copeland v. Katz, No. 05-73370, 2005 WL 3163296, *3 (E.D. Mich. Nov. 28, 2005) (quoting Green Tree, 531 U.S. at 92)).  Francis' reference to the "seven figure" cost of discovery in a related Ohio action does not meet this burden. Unlike the complex legal and factual issues presented in antitrust actions such as Kristian, Francis has not persuaded the court that his billing dispute of $1,143.00 for calls he allegedly made or received from within his Plan's DCA and IRFCA, calls that should have been free under the Plan, would be "extremely compromised, and effectively precluded" if Francis does not engage in "seven figure" discovery related to AT&T's technical ability

14

to determine the geographic source of wireless phone calls.  Kristian, 446 F.3d at 58.
Using his monthly itemized bills, and presumably his knowledge of where he and his wife
were located when they sent or received the disputed calls, Francis has precisely
calculated his alleged losses at $1,143.00, without the need for such discovery.  While it
would certainly be economically impracticable for Francis or an attorney to front millions of
dollars in discovery and expert costs to recover $1,143.00, Francis has not shown that,
without this discovery and  technical experts, he cannot prove his claim in arbitration.
Copeland, 2005 WL 3163296 at *3 (quoting Green Tree, 531 U.S. at 92); Kristian, 446 F.3d
at 58.

     Francis' claims involve discrete wireless phone transactions, more akin to TILA
credit transactions than the complicated transactions involved in antitrust lawsuits, and as
described in Kristian.  See Kristian, 446 F.3d at 58.  Because the absence of "seven figure"
discovery will not extremely compromise or effectively preclude Francis from succeeding
on his claims in arbitration, AT&T's dispute resolution process provides a significant
incentive for Francis, aided by an attorney, to pursue the $1,143.00 MCPA claim in private
arbitration.  Francis' assertion that AT&T's right to make the final pre-arbitration settlement
offer renders the premium recovery of a minimum of $5,000.00 and double attorney fees
illusory ignores the goal of informally resolving billing disputes before they reach arbitration.
Further, whether the "premium" promised by AT&T is illusory is an issue to be decided by
the arbitrator.  Adler, 2008 WL 5351042, at *12.

     In addition to a monetary incentive for consumers to file an individual MCPA
arbitration claim is the option of administrative and judicial enforcement by the Michigan
Attorney General.   M.C.L. § 445.910(1), (2).  Francis has not proffered authority for the
proposition that his contract with AT&T would preclude him from being reimbursed as part
of a court order obtained by the Michigan Attorney General in a MCPA administrative

enforcement action.  M.C.L. § 445.910(2).  Indeed, federal case law indicates otherwise.
See E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 282, 285 (2002) (holding that agency's
statutory authority to pursue victim-specific relief on behalf of employees in an
administrative action filed in federal court is not barred by employees' agreement to
arbitrate with employer).  AT&T has not "erased" the Michigan Attorney General's right to
file an administrative class action lawsuit, or its deterrent effect upon continuing MCPA
violations.  Francis' argument that Michigan consumers will remain in the dark if he is
required to pursue his claim individually ignores the MCPA's statutory scheme, envisioning
both private and administrative actions.  Francis' assertion that the Michigan Attorney
General cannot afford to protect consumers' rights in this economic climate is unsupported
and unpersuasive.

Consistent with this court's analysis in Adler, the rationales from the Third, Fourth,
Seventh, and Eleventh Circuits in Johnson, Snowden, Livingston, and Randolph, supra,
support the contractual bar of Francis' MPCA claims in a private class action lawsuit.  Adler,
2008 WL 5351042, at *10-*11.  As reasoned herein and in Adler, Francis' MPCA claims are
more akin to simpler TILA claims than complex antitrust claims.  Id.  Accordingly, Francis
has failed to demonstrate that the AT&T class action waiver is substantively
unconscionable as being so extreme as to shock the conscious.  Id. at *9-*10.

iii. Procedural and Substantive Unconscionability

The court concludes that, while Francis had no realistic choice in acquiring
comparable cell phone services from another wireless phone service provider that did not
require an agreement to arbitrate and a class action waiver, the AT&T arbitration clause
and class action waiver executed by Francis would not, on the specific facts of this case,
shock the conscience of the Michigan Supreme Court.  Meridian Mutual, 197 F.3d at 1181.
Faced with the issue, the Michigan Supreme Court would conclude that Francis' waiver of

16

the right to file or participate in a class action lawsuit is not substantively unconscionable. Id. On balance, and in the absence of substantive unconscionability, Francis' claim of unconscionability fails as a matter of law. Adler, 2008 WL 5351042, at *9 (citing Andersons, Inc., 166 F.3d at 322). In light of this ruling, the court finds it unnecessary to address whether the FAA preempts a finding under Michigan law that the class action waiver is unenforceable as a matter of federal law. See Adler, 2008 WL 5351042, at *12 fn5.

## V. Conclusion

Defendant AT&T's motion to compel arbitration of plaintiff Robert Francis II's claims on an individual basis is hereby GRANTED. Francis' motion to declare class action waiver unlawful is hereby DENIED. This case shall be STAYED pending resolution of the arbitration pursuant to 9 U.S.C. § 3.

SO ORDERED.

Dated: February 18, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 18, 2009, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---